## Case No. 9,782.

### MOORE v. YOUNG.

[4 Biss. 128.][1]

Circuit Court, D. Indiana. Jan. Term, 1868.

BANKRUPTCY—VOID PREFERENCE—CHATTEL MORTGAGE—RIGHT OF MORTGAGEE TO TAKE POSSESSION—ATTEMPT TO SELL—RECORDING—RIGHTS OF ASSIGNEE.

1. The filing by the mortgagor of a voluntary petition in bankruptcy is "an attempt to sell," within the meaning of the usual clause in chattel mortgages.

2. A chattel mortgage on a stock of goods can only be prima facie fraudulent. as being out of the usual and ordinary course of business, and its validity may be established by proof.

3. In Indiana an unrecorded chattel mortgage, where the property is not delivered to the mortgagee, is absolutely void, as against the assignee in bankruptcy of the mortgagor.

[Cited in Re Oliver, Case No. 10,492.]

4. The assignee is not one of "the parties to the mortgage," but for the collection of assets he represents the creditors, and may sue in every case where they might have sued had the debtor not become bankrupt.

[This was a bill by George J. Moore, assignee in bankruptcy, against Zebulon J. Young.]

A. C. Downey, for complainant.

Carter, Downey & Gordon, for defendant.

McDONALD, District Judge. This is a proceeding in chancery under the bankrupt law. The bill was filed October 30, 1867. The case it proceeds on is substantially as follows: On the first of July last, one Shadrach Hathaway and William H. Hathaway were indebted to the defendant Young to the amount of four thousand dollars, for which they executed to him a note for that sum, payable in one year; and, to secure its payment, they executed to him a mortgage on about twelve thousand dollars worth of goods in a store at Vevay, in Switzerland county, Indiana. The Hathaways then resided at Rising Sun, Ohio county, Indiana. Of this stock of goods, Young had then, and till August following, the custody as their agent and clerk to retail the same.

On the 28th of August, 1867, the Hathaways were, on their own petition, by this court adjudged bankrupts; and Moore, the complainant, was chosen their assignee in September following. At the time when the mortgage was executed, and till the time when the bill was filed, the goods in question were kept in a store-house in Vevay, which was held by the Hathaways under a lease for years.

On the 23rd of October, 1867, Moore, as assignee, demanded the possession of said store-house and goods from Young, who refused to deliver them, claiming the right to retain the goods by virtue of the mortgage. The store-house is not included in the mortgage.

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

The bill charges that Young was not justified in withholding the store-house and goods by virtue of the mortgage,—1, because the store-house is not mortgaged; 2, because no default by the mortgagors has happened entitling the mortgagee, according to the terms of the mortgage, to take possession of the goods; 3, because the mortgage was made in contemplation of insolvency within four months of the filing of said petition in bankruptcy, with a view to give a preference to Young as a creditor of the bankrupts, he then having reasonable ground to believe that they were insolvent, and that the mortgage was made in fraud of the bankrupt law [of 1867 (14 Stat. 517)]; 4, because the mortgage was not made in the usual and ordinary course of business of the Hathaways; 5, because the mortgage is void on its face; 6, because the mortgage was never recorded in the county where the mortgagors resided.

A copy of the mortgage is exhibited with the bill.

The answer filed admits the proceedings in bankruptcy; the appointment of Moore as assignee; that the goods in question are in Young's custody, and are worth eleven thousand eight hundred thirty-three dollars and twenty-four cents; and that the mortgage was never recorded in the county where the mortgagors resided. But it denies all fraud; and alleges that the mortgage was made bona fide, not in contemplation of bankruptcy or insolvency, without any view to a preference, without any ground to believe that the Hathaways were insolvent or contemplated insolvency, and in the usual course of their business. The answer avers that the assignment in bankruptcy was such an attempt to sell the mortgaged property as, by the terms of the mortgage, entitled Young to the possession of the goods.

A general replication has been filed; and the cause has been submitted for final hearing and decree on the bill, answer, exhibits, depositions, and certain evidence heard on the trial.

If the mortgage was made bona fide, on a proper consideration. and not in violation of any of the provisions of the bankrupt law, and if it is valid on its face. and is not rendered void as to the assignee by the omission to record it,—I suppose that this action must fail as to the goods. For if, under the facts alleged and proved. Young has a valid lien on the goods. the assignee's course was, not to file this bill, but to apply to the court for leave to redeem the goods from the mortgage lien. Such is the course pointed out by the 14th section of the act and the 17th rule of the supreme court. As to Young's refusal to deliver possession of the store-house, the record shows no justification or excuse for it on the part of the defendant. There must, therefore, be a decree against him on this branch of the case.

As to the goods claimed by the defendant by virtue of his supposed mortgage lien; I

will consider the complainant's objections to that claim set forth in the bill, in the order in which they are above stated.

1. The complainant urges that no default has yet happened, touching any condition in the mortgage; and that, therefore, the defendant is not entitled to the possession of the goods. The note, the payment of which the mortgage was intended to secure, will not be due till July next, so, there has been no default in payment.

The mortgage provides that the goods are to remain in the mortgagors' possession till default be made in payment; but that any attempt to sell the goods, without the consent of the mortgagee, shall entitle him to their possession. Were the proceedings in bankruptcy an attempt to "sell" the goods within this provision of the mortgage? I am inclined to answer this question in the affirmative. On the principle that we must construe such instruments as this most strongly against the makers of them, according to the spirit of them, and according to the intent of the parties, I rather think that the transfer of the goods in the bankrupt proceeding was an attempt to sell them, as a sale of them would be the consequence. And this view, I think, is sanctioned by the maxim, "Qui facit per alium, facit per se." The mortgagor could no more authorize their sale by a proceeding in bankruptcy, than he could sell them himself, without breaking the condition of the mortgage.

2. The bill avers that the mortgage is void, because it was made in contemplation of insolvency within four months next before the filing of the mortgagors' petition in bankruptcy. The thirty-fifth section of the act provides that transfers of property, made in contemplation of insolvency within four months before proceedings in bankruptcy by or against the party making the transfer, shall be void, the person to be benefited thereby "having reasonable ground to believe such person is insolvent," and that such transfer "is made in fraud of the provisions of" the bankrupt law. But the evidence does not bring the defendant and his mortgage within the provisions of this section of the act. On the contrary, it is clearly proved that the mortgagors, in executing this mortgage, did not contemplate insolvency, and did not execute it with intent to violate the provisions of the act; and it is equally well proved that the mortgagee, when he took the mortgage, had no reason to believe that the mortgage was made in fraud of the bankrupt act, or that the mortgagors were then insolvent, or even under any pecuniary embarrassment. This objection to the mortgage. therefore, fails for want of proof.

3. The mortgage is objected to as void under the bankrupt law, because it was not made in the usual and ordinary course of the business of the mortgagees. The thirty-fifth section of the act declares that if such a mortgage as the present "is not made in the usual

and ordinary course of business of the debtor, the fact. shall be deemed prima facie evidence of fraud." It is not easy to see precisely what is here meant by the phrase—"the usual and ordinary course of business of the debtor." But I am inclined to think that, upon the evidence, the mortgage in question was made in the usual and ordinary course of business as much as any chattel mortgage could be. It was made to secure an honest debt, part of which was money loaned at the time. But be this as it may, the mortgage could at most be only prima facie fraudulent; and I think the evidence plainly overthrows any such prima facie presumption against this mortgage. This objection to the validity of the mortgage, therefore, can not be sustained.

4. Does the omission to record the mortgage in the county where the mortgagors resided render it void as to the assignee in bankruptcy? The answer to this question must depend on our construction of the bankrupt act and of the Indiana statute relating to the recording of chattel mortgages.

As to the bankrupt act, the defendant insists, that it gives to the assignee precisely the same rights—neither more nor less—which the bankrupt had before the commencement of proceedings in bankruptcy; and that, as an unrecorded chattel mortgage is confessedly good between the mortgagor and mortgagee, so it must be good as between the assignee in bankruptcy of the mortgagor and the mortgagee. It must be admitted that this view is sustained by many decisions under the bankrupt act of 1841 [5 Stat. 440], and that it is supported by the high authority of Judge Story. Yet nearly all these decisions, except from the rule the case of a fraudulent conveyance by the bankrupt, which is allowed to be good as to the bankrupt himself, but void as to his assignee. This exception has obtained on the ground that such a conveyance is a fraud upon creditors, and that, as the bankrupt law took away the right of action by creditors for such fraud, it must be deemed to have vested the same right of action in the assignee—else the creditors would be without remedy. Does not the reason of this exception equally apply to the case of an unrecorded chattel mortgage? It is very clear that, as to creditors, an unrecorded chattel mortgage, where the property is not delivered to the mortgagee, is absolutely void. And, in the present case, it is certain that if the Hathaways had not been decreed bankrupts, their creditors might have subjected the goods in question to the payment of their debts, notwithstanding this mortgage. But now their right to do so is taken away by the adjudication in bankruptcy; and is it not just as reasonable to suppose that the right vested in the assignee, as that it does so in the case of a fraudulent conveyance? Besides, is it very clear that the failure to record a chattel mortgage, in cases where the mortgagor retains the chattels, is not, in

law, a fraud? It is the rule in Twyne's Case, 3 Coke, 80, that the retention of possession by a vendor or mortgagor of chattels, is in law conclusive evidence of fraud; and there is no authority which makes such retention less than prima facie evidence of fraud upon creditors. The Indiana statute, indeed, so far alters the rule, that if the mortgage is duly recorded the retention of the possession of the goods by the mortgagor is here, perhaps, no evidence of fraud at all. But if the mortgage is not recorded, I think the case is left, as under the statutes of 13 and 27 Eliz., in which such retention of possession is at least prima facie evidence of fraud. In the present case, therefore, the omission to record the mortgage is, in my opinion, a fraud upon the creditors of the bankrupts; and so the case falls literally within the exception to the general rule insisted on by the defendant and supported by the authority of Judge Story.

The third proviso of the fourteenth section of the bankrupt act seems to sustain the view here taken. It declares, "That no mortgage * * * made as security for any debt or debts in good faith, and for present consideration and otherwise valid, and duly recorded pursuant to any statute of the United States, or of any state, shall be invalidated hereby."

This provision saves from the operation of the act all prior bona fide mortgages made on present considerations, and duly recorded; and it saves no others. The inference from it appears to me to be fair, and even irresistible, that mortgages not so made and recorded shall be invalidated by the bankrupt act. And, upon this proviso alone, I would think the mortgage in question void as to the complainant.

The Indiana statute provides that, "No assignment of goods by way of mortgage shall be valid against any other person than the parties thereto, where such goods are not delivered to the mortgagee or assignee and retained by him, unless such assignment or mortgage shall be acknowledged, as provided in cases of deeds of conveyance, and recorded in the recorder's office of the county where the mortgagor resides, within ten days after the execution thereof." 1 Gavin & H. St. p. 352.

It should be noted that this statute is unlike most statutes relating to the recording of deeds and mortgages of real estate, by which, unless recorded within a given time, they are "fraudulent and void as against any subsequent purchaser or mortgagee in good faith and for valuable consideration." 1 Gavin & H. St. p. 261. Under such provisions the unrecorded instrument is held good as to all men except purchasers and mortgagees in good faith and for valuable consideration; and he who has notice of such unrecorded instrument is not such purchaser or mortgagee in good faith, and it is valid even as to him. Whereas, the statute above cited makes the unrecorded mortgage of chattels absolutely void as to all men but "the parties thereto," even though they have notice thereof, the only question, as to the mortgage under consideration, seems to me to be thus: Is Moore, the assignee in bankruptcy, a "party thereto"? Without the aid of any authority, we might well answer this question in the negative: the parties thereto are the mortgagors and the mortgagee only. But in rendering this answer, we are not without authority; we are supported by a controlling authority. The supreme court of Indiana, in Lockwood v. Slevin, 26 Ind. 124, has so decided. That case decides that in the case of a voluntary assignment by an insolvent debtor for the benefit of his creditors, his assignee shall hold the goods assigned as against a prior unrecorded mortgage of them; and that such mortgage is void as to such assignee. And Judge Frazer, who delivered the opinion in that case, says that "the statute expressly enacts that a mortgage of chattels, where the possession is not changed, shall not be valid against any other person than the parties to it, unless it is recorded within ten days after the execution thereof. The language is so plain that no room is allowed for construction. Actual notice can make no difference." This decision is in point. It is a construction of the Indiana statute concerning the recording of chattel mortgages, given by the supreme court of Indiana; and it is binding on the courts of the United States. Chicago City v. Robbins, 2 Black [67 U. S.] 418; Gelpcke v. City of Dubuque, 1 Wall. [68 U. S.] 175; Christy v. Pridgeon, 4 Wall. [71 U. S.] 196; Green v. Van Buskirk, 5 Wall. [72 U. S.] 307. Then, the supreme court of Indiana has settled the meaning of the Indiana statute in question, and has held that a prior unrecorded chattel mortgage is void as between the mortgagee and an assignee under a voluntary assignment for the benefit of creditors. If as to such an assignee it is void, the inevitable conclusion must be that it is void as to an assignee in bankruptcy; for surely the former can have no greater rights than the latter. Indeed there is strong reason to conclude that they are not so great, since the one is a mere volunteer and the whole proceeding voluntary; whereas the other is appointed and controlled by a United States court, and governed by an act of congress. But it is enough for the purpose of this decision that the two stand in all respects upon an equality.

In my opinion, it is an error that an assignee in bankruptcy stands in all respects in the condition of the bankrupt, and represents him only. I think that, in the collection of assets, he also represents the creditors; and, as a general rule, may sue in every case in which they might have sued, if the debtor had not become a bankrupt. Upon the whole case, as made in the bill, the decree must be for the complainant.

NOTE. In a state where a mortgage is void as to creditors unless recorded. the assignee takes title as against an unrecorded instrument. Allen v. Massey [Case No. 231]; In re Wynne [Id. 18,117]; Brock v. Terrell [Id. 1,914]; Bank of Leavenworth v. Hunt. 11 Wall. [78 U. S.] 391: Harvey v. Crane [Case No. 6,178], and cases there cited. Nor can the mortgagee rely upon possession taken under his unrecorded mortgage. Harvey v. Crane. last above cited; In re Hussmann [Case No. 6,951]; In re Manly [Id. 9,031]; Foster v. Hackley [Id. 4,971]; Bean v. Amsink [Id. 1,167]; Seaver v. Spink [65 Ill. 441]; In re Morrill [Case No. 9,821].

As to what is a sale, in "the usual and ordinary course of business," consult In re Hunt [Case No. 6,881]; Rison v. Knapp [Id. 11,861]; Darby v. Lucas [Id. 3,572]; Judson v. Kelty [Id. 7,567.]

The assignee, as to parties claiming rights or liens against the estate, represents the creditors. and any transaction which would be void for fraud as against creditors if no petition had been filed, is void as against the assignee. He takes the title, and it is his duty to proceed legally to annul a fraudulent conveyance. In re Wynne [supra]; In re Metzger [Case No. 9,510]; Boone v. Hall. 7 Bush. 66: Bradshaw v. Klein [Case No. 1,790]; Pratt v. Curtis [Id. 11,375].