SHEPARDSON VS. CARY, Executor, etc.

*Former Adjudication.    Warehouse receipt as evidence of title.*

1. A judgment is conclusive, not only as to the matters actually determined, but as to all matters which the parties might have had decided under the pleadings and issue joined.
2. One who either owns or has a lien upon personal property may, in an action at law, either recover possession of it, or damages to the amount of his lien, against one who has converted the property in fraud of his rights.
3. A judgment for the defendant in such an action, on the ground that his title is paramount to any right or lien of the plaintiff, will, therefore, bar any subsequent suit *in equity* founded on such alleged lien.
4. S. sued G. for damages for a conversion of certain coal alleged to be plaintiff's property, and G. answered a general denial, and an assertion of title in himself under a bill of sale from D. T. & Co.  On the trial, S. claimed under a receipt given him for the coal by D. T. & Co., as collateral security for a debt due him from them; but judgment went against him on the ground that the receipt gave him no title as against G.  He then brought this action, based upon an alleged equitable lien upon the coal under said receipt, and seeking to enforce compensation from G.  *Held*, that the action was barred by the former judgment.
5. An instrument designed to operate as a *chattel mortgage*, but not filed as such, pursuant to the statute (possession of the property not being changed,) cannot be treated in an equitable, any more than in a legal action, as creating a lien against a subsequent purchaser for value.

6. Where plaintiff claims title to chattels under a receipt therefor, the court cannot presume that the receiptors were *warehousemen,* and the instrument a warehouse receipt; but those facts must be shown by pleadings and proof.

7. In cases free from fraud (or perhaps mistake), the holder of a *warehouse receipt* is to be regarded as the vendee and owner of the property for all purposes, and the warehouseman as his bailee; and the statute relating to chattel mortgages does not apply to such instruments; and this is true even where the sale is made as collateral security for the payment of a debt due from the warehouseman.

The decision in *Shepardson vs. Green,* 21 Wis., 539, as to this point, criticised and modified.

APPEAL from the County Court of *Milwaukee* County.

Action to enforce an alleged equitable lien upon 560 tons of coal, brought after a judgment had been rendered against the plaintiff, in an action at law against the same original defendants for the conversion of the same coal, on the ground that he had shown no title as against the defendants, and had been affirmed on appeal.

The decision in that case, and the facts elicited on the trial, are reported in 21 Wis. R., 538.

The defendant having died pending this action, his executor was substituted in his place.

The complaint in this action sets out at large the facts that in October, 1864, D. T. & Co, a firm doing business as storage, forwarding and commission, and as coal and wood merchants, in the city of Milwaukee, procured him to sign a note with them for their accommodation, and agreed to and did assign to him a shipping bill of 200 tons of coal then *in transitu,* and after its arrival and delivery at their yard, on the first day of November following, gave him a warehouse receipt for that and other coal then in the yard, to the amount of 560 tons ; that in January, 1865, the said firm and each of its members having become insolvent, they, without the plaintiff's knowledge or consent, and against his will, sold all their partnership effects, including the coal in controversy, then in their yard, to the defendant; that the plaintiff immediately gave notice of his

equitable claim, and forbade the removal of the coal; but the defendant, disregarding the notice, proceeded to take possession of the coal, and afterward sold it to *bona fide* purchasers without notice, receiving payment to an amount exceeding the alleged value of the 560 tons ; and that the plaintiff had been obliged to pay the note, and had not received anything by way of reimbursement or security; that D. T. & Co., and each of them, are utterly insolvent. It therefore prays the court to adjudge that the plaintiff had a valid, equitable lien upon the 560 tons of coal until it was wrongfully sold to *bona fide* purchasers, and that he has a lien upon the proceeds in defendant's hands, and that he may recover judgment against the defendant for the amount paid by him on such note, with interest and costs.

The answer as a first defense sets up the former adjudication in bar; and the plaintiff demurs to that defense on the ground of insufficiency.

From the order overruling such demurrer this appeal is taken.

*Carpenter & Murphey*, for appellant, argued that the former action involving only the *legal title* to the coal in question, and did not bar the plaintiff's right to maintain an action to enforce the equitable lien acquired by him by virtue of the warehouse receipt, citing *Fletcher v. Morey*, 2 Story, 555 ; *Mitchell v. Winslow*, id., 630; *Clark v. Flint*, 22 Pick., 231 ; *Root v. French*, 13 Wend., 570 ; *Buffington v. Gerrish*, 15 Mass., 156 ; *Doe ex dem. Robinson v. Allsop*, 5 Barn. and Ald., 142 ; *Gay v. Fretwell*, 9 Wis., 186; *Emmons v. Dow*, 2 Wis., 322 ; *Murphy v. Farwell*, 9 Wis., 102 ; *Eastman v. Porter*, 14 Wis., 39 ; *Mallory v. Mariner*, 15 Wis., 177 ; *Eldredge v. Jenkins*. 3 Story, 181 ; *Manny v. Harris*, 2 Johns, 24 ; *Campbell v. Butts*, 3 N. Y., 173 ; *Skelding v. Whitney*, 3 Wend., 154; *Yates v. Fassett*, 5 Denio, 21 ; *Ball v. Larkin*, 3 E. D. Smith, 556 ; *Angel v. Hollister*, 38 N. Y., 378 ; *Matthews v. Duryee*, 45 Barb., 69 ; *Barth v. Burt*, 43 Barb.. 628; *Slauson v. Englehart*, 34 Barb., 198 ; *Staple v. Spring*, 10 Mass., 72; *Melvin v. Whiting*, 7 Pick., 79 ; *Salem India Rubber*

*Company v. Adams,* 23 Pick., 256 ; *Buttrick v. Holden,* 8 Cush., 233 ; *Gilbert v. Thompson,* 9 Cush., 348 ; *Harding v. Hale,* 2 Gray, 399 ; *McDowell v. Langdon,* 3 Gray, 513 ; *Coleman's Appeal,* 62 Pa. St., 252. They also insisted that the plaintiff's proper remedy was the relief sought for in this action, citing *Tenney v. State Bank of Wisconsin,* 20 Wis., 152 ; and *Hopkins v. Gilman,* 22 Wis,, 476, 480 ; that the defendant having notice of the plaintiff's equitable lien before payment or delivery, took the legal title subject thereto ; and that the statute relative chattel mortgages does not apply to a case where the purchaser has notice of the equitable lien, citing *Lane v. Lutz,* 1 Keyes, 203 ; *Tiffany v. Warren,* 24 How. Pr., 293 ; *Sawyer v. Eastwood,* 19 Wend., 514 ; *Gregory v. Thomas,* 20 Wend., 17 ; *Lewis v. Palmer,* 28 N. Y., 271.

*E. Mariner,* for respondent, cited Story's Eq. Jur., §§ 1216 and 1229 and cases ; *Fowler v. Down,* 1 Bos. & Pul., 45 ; 1 Smith's Leading Cases, 602.

DIXON, C. J. The defendant answers the former judgment in his favor and the judgment of affirmance in this court, by the title of the case and volume and page of the report, *Shepardson v. Green,* 21 Wis., 539, setting out by way of exhibit annexed to the answer the former record here verbatim and at length, and insisting upon the same as a bar and absolute estoppel of the rights claimed by the plaintiff in this suit. This is the only question presented by the demurrer to the answer: Is the former judgment a bar to the relief demanded in this suit ? The former was an action at law by the plaintiff against the defendant, to recover damages for the conversion of the same lot of coal mentioned in the warehouse receipt set out in the complaint in this suit and dated November 1, 1864. The complaint in that action was general, as in such cases, averring title and possession of the property in the plaintiff on a certain day, and that it afterwards came to the possession of the defendant, who, well knowing it to be the property of the plaintiff, and

though often requested, etc., had not delivered the same to the plaintiff, but on the contrary had converted and disposed of it to his own use. The answer was a general denial, and in addition a special claim of title in the defendant under the bill of sale from Dowe, Tibbets & Co. to him.

This suit purports to be one in equity, instituted for the purpose of enforcing what is termed the equitable lien created in favor of the plaintiff by virtue of the same instrument, denominated a warehouse receipt. Such equitable right or lien of the plaintiff, it is claimed and insisted on his part, is not barred or affected by the former judgment. It is obvious, whatever may have been the rights of the plaintiff under the instrument called a warehouse receipt, set out in the complaint in this suit, and given in evidence by the plaintiff on the trial of the former action as the foundation of his claim and right to recover in that, and which, from the averments now contained in the complaint, appears actually to have been a warehouse receipt, that all such rights might have been amply vindicated, and full and adequate redress given in the former action at law. This is obvious in whatever light the instrument may be regarded, or whatever may be, or might then have been, considered its nature and effect, and whether the rights of the plaintiff be looked at as legal or equitable, or both.

If, for example, it be regarded as a chattel mortgage, or a sale or assignment in the nature of one, thus giving the plaintiff certain legal and equitable rights, as against the makers, Dowe, Tibbits & Co., or against others, the action at law was ample for the protection and enforcement of all such rights. Grant that the remedy in equity existed by reason of the lien and equitable right, and might have been resorted to before the action at law was commenced, tried or determined, still the latter was, by reason of the legal title and right at law, a remedy of equal usefulness and efficacy. If equity will enforce the lien of the mortgage in such cases, and work out and compel satisfaction of the mortgage debt, from the property in the

Shepardson vs. Cary, Executor, etc.

hands of the mortgagor, or other party holding it subject to the mortgage, or decree payment of the debt by the mortgagor, or such other party who has converted or disposed of the property in fraud of the mortgagee, or so as to deprive him of his lien or right, the law, though upon somewhat different principles, and by a different method, will accomplish the same practical result, and afford a no less efficient and adequate remedy. The law will do this by just such an action as that first instituted by this plaintiff. It will give the mortgagee, provided as such he is entitled to recover against the defendant at all, damages for the conversion of the property to the full extent or value of his lien upon or interest in the property. This is all that equity could do by adjudging compensation to be made, under the circumstances of this case.

The remedy at law, therefore, founded on the legal title or right, is equivalent to that given in equity, founded on the equitable title or lien. It is in every case co-extensive and concurrent with the remedy in equity, and being so, it would seem necessarily to follow that the judgment in an action at law would bar and estop the party subsequently resorting to his suit in equity upon the same subject or ground of action, and *vice versa*. Indeed, it is well settled that this is so. See *Pierce v. Kneeland*, 9 Wis., 23. *Simpson v. Hart*, 1 John, Ch. R., 91. If the property be in existence so that chancery can take hold of and enforce satisfaction of the debt by a sale of it, there the mortgagee or creditor has also his action of replevin, to obtain possession of the property at law, and in that way to compel satisfaction. Under all circumstances, therefore, the legal and equitable remedies seem to be concurrent and co-equal, and a final judgment in one forum a bar to further agitation and controversy with respect to the same subject matter in the other. If the mortgagee should bring replevin for the property, and be defeated in the action on the ground that his mortgage was void, or not a lien upon the property in the possession of the defendant, it could not be tolerated that he might

then bring his suit in equity and compel the defendant to litigate the same questions over again in that court, upon the ground of his supposed equitable title or lien. His entire right or title would be involved in the issue at law, and that decision would be *res adjudicata* in the court of equity. And the same result must follow where the proceeding at law is in trover or other form of action to recover damages for the taking or conversion of the property, and it is adjudged against the plaintiff on the merits, that his mortgage is void, or that he has no title to or lien upon the property as against the defendant.

For these reasons, therefore, regarding the instrument in question as a mortgage, the former adjudication, plead and relied on in the answer as a bar, must be held good and sufficient for that purpose; and for the same reasons the authorities cited by counsel for the plaintiff are inapplicable. This is not an equitable right which could not be reached or redressed in the action of law. It was as a mortgage that the instrument was presented for the consideration of the court in the former action, and the rights of the plaintiff urged under it. It was as such that it was treated, spoken and judged of by the court, and held not to be valid against the defendant, although he purchased or paid for the property with notice of the plaintiff's claim. It was so held on the language of the statute and on the authority of *Single v. Phelps*, 20 Wis., 398. The statute declares that no mortgage of personal property made after its passage shall be valid against any other person than the parties thereto, unless possession of the mortgaged property be delivered to and retained by the mortgagee, or unless the mortgage or a copy thereof be filed in the office of the town clerk where the mortgagor resides. It appeared in that case, as it does in this, that the plaintiff had neither taken nor retained possession of the property under the instrument claimed to be a mortgage nor filed it or a copy of it in the town clerk's office, at the time the defendant purchased and received possession of the property from the alleged mortgagors.

Shepardson vs. Cary, Executor, etc.

But there is still another reason, regarding the instrument as a mortgage or in the nature of one, why this application in equity must prove unavailing. If a mortgage, it was under the operation of the statute equally void as to the defendant in equity as at law, for want of filing in the town clerk's office, or of possession of the property taken and held by the plaintiff under it. Equity no more than the law can disregard the positive provision of a statute; and as relief in equity could not be granted without overthrowing the statute, it would follow that the suit must be dismissed, even though there were no previous adjudication standing in the way of a recovery, and still more if there was one.

There seem to be but two other characters, besides as a mortgage, in which effect might have been given to the instrument in favor of the plaintiff. One was as a bill of sale from Dowe, Tibbits & Co. to him of the property left by him in their possession, and subsequently bought of them or paid for by the defendant with knowledge of the rights of the plaintiff. The bill of exceptions in the former case, transcribed into the answer in this, showed that the defendant paid the full amount of the purchase money to the Merchants' Bank and Juneau Bank, creditors of Dowe, Tibbits & Co., according to the terms of the bill of sale, after he had notice of the claims of the plaintiff. In that view, it might have been said that the defendant was not a subsequent purchaser in good faith and that the plaintiff had the better title, unless the defendant was entitled to stand in the place of and represent the creditors of Dowe, Tibbits & Co., for whose benefit the sale to him was made, and to whom he paid the purchase money. R. S., ch. 107, § 5. The transaction was not considered in this light, nor the effect of it as a sale either absolute or conditional determined.

The other view which might have been taken of the instrument, and which under proper circumstances might have resulted beneficially to the plaintiff, was, that it was a warehouse receipt. Such was the form of the instrument, and the effect

to be given to it according to its words, and, as already observed, such now by the averments of the present complaint appears to have been the real nature of it. It is now averred in the complaint and admitted by the demurrer that the makers, Dowe, Tibbits & Co., were in fact warehousemen, engaged in the transaction of that business, as well as coal and wood merchants. The fact did not formerly appear, either by averment in the pleadings or by proof on the trial. The facts then shown were —we quote from the bill of exceptions—"that they were dealing in coal, and from the time of its receipt by them, until taken by the defendant, they were engaged in selling and delivering the same to their customers in the usual course of their business, and receiving the proceeds thereof and appropriating them to their own uses and purposes." The fact that they were warehousemen, assuming them to have been such, was not there shown. Proof of their character as such was necessary in order to give effect to the instrument as a warehouse receipt.

The court could not take judicial notice that they were warehousemen, nor presume it as a fact from the mere issuing of the receipt. Actual proof was necessary in order to make an effectual transfer of the property in that way; for otherwise it would be competent for every person, whether warehouseman or not, thus to dispose of personal property in his possession, to the great embarrassment and deception of subsequent purchasers, creditors and others.

To uphold the receipt as a proper warehouse document, transferring the title to the property and operating as a good constructive delivery of it to the vendee, it must in all cases distinctly appear that it was executed by a warehouseman—one openly engaged in that business—and in the usual course of trade, without fraud or intention of fraud or bad faith on the part of the person receiving and seeking to enforce title under it. In the former case, therefore, if for no other reason, the plaintiff could not have maintained title against the defendant upon the instrument as a warehouse receipt, because there was

no proof of the business character of the makers, or evidence that they were warehousemen.

But in whatever light the instrument might then have been examined or on whatever ground the cause decided adversely to the plaintiff, holding that he had no title to the property as against the defendant, the judgment is now equally a bar and conclusive upon the rights of the plaintiff, whether upon the instrument as a chattel mortgage, bill of sale, or warehouse receipt, the title of the plaintiff was maintainable, the judgment now concludes him both at law and in equity. Under the pleadings and issue as presented it was competent for him to sustain his title on either ground, if valid; and if, for want of proof of particular facts or for other cause, or because the court took an erroneous view of the law, judgment went against him and the title of the defendant was decided to be superior, it is *res adjudicata* and cannot again be inquired into or litigated in another suit between him and the defendant. It is a familiar principle in the law of estoppel by judgment, that the judgment is final and concludes not only as to the matters determined, but as to all matters which the parties might have ligitated, and which they might have had decided under the pleadings and issue joined in the action. *Eastman v. Porter*, 14 Wis., 39, 48, 49. It is the decision by a court of competent jurisdiction that the defendant had the superior title, which binds, and it is immaterial what was the ground or what the reasons assigned by the court for making it.

We cannot conclude our examination of this case, or close our remarks upon it without some observations upon the language of the opinion in the former case, the effect of the judgment in which has been the subject of consideration here. 21 Wis., 541, 542. The language of that opinion undoubtedly proceeds upon a misconception or erroneous view of the law with respect to the effect of a warehouse receipt as an instrument transferring the legal title and constructive possession of the property to the holder of it, and protecting him against a

subsequent sale or transfer of the same property by the warehouseman, even to a purchaser without notice, and against the the creditors of the warehouseman who may subsequently seize property in his possession in satisfaction of their demands. The law on this subject was correctly held in *Gibson v. Stevens*, 8 How. (U. S.), 384, in *Gibson, Stockwell & Co. v. The Chillicothe Bank*, 11 Ohio St. R., 310, and in *Rice v. Cutler*, 17 Wis., 351, to be that the execution and delivery by the warehouseman of the receipt, carries the vendor's title and constructive possession of the property to the vendee, who, or the party claiming under him, as the holder of the receipt, is thenceforth, in cases free from fraud or bad faith, or it may be of mistake, regarded as the owner of the property for all purposes, and the warehouseman as mere bailee, having the custody of it for the benefit of the vendee or other holder of the receipt, and subject to his order and control. The relation between the parties and their rights and obligations are considered the same as if the vendee had purchased the property from some other owner, and then placed it in the warehouseman's possession, taking his receipt in the same form. Such relation, and the consequent rights and obligations of the parties are held by the decisions just referred to, even where the sale is made as collateral security for the payment of a debt due from the warehouseman, not to be affected by the statute regulating the making and filing of mortgages of personal property, nor by the act concerning warehouse receipts and bills of lading. Whether the same effect would be ascribed to a bill of lading or receipt by a common carrier of goods sold by him and left in his possession to be transported for the benefit of the vendee and subject to his order, or the order of the indorsee or holder of the bill of lading or receipt, it is unnecessary now to inquire. We know of no case in which this point has been presented and decided, as it has been with respect to the receipt of a warehouseman or wharfinger.

*By the Court.* — Order affirmed, and cause remanded.