JUDGE PRYOR
delivered the opinion of the court.
The appellants Cochran & Fulton, merchants of the city of Louisville, advanced to one William H. Shipman, of Lawreneeburg, Ky., $7,500 in their two acceptances, payable in four months from the 16th of May, 1874. For the purpose of securing appellants, Shipman gave them a warehouse receipt for ninety-five barrels of whisky, reading as follows: “Received May 16th, 1874, of Cochran & Fulton, on storage in my warehouse, situated in Lawrenceburg, Ky., ninety-five barrels of T. B. Ripy whisky, made in the month of April, 1873, marked with the serial Nos. 570 to 574 and 635 to 724 inclusive, containing 3,859.65 gallons, which whisky is covered by insurance, and is held for said Cochran & Fulton on storage, and is deliverable only on the surrender of this certificate. Signed, W. H. Shipman.”
*500 On the 10th of June, 1874, they made another advance of about $5,000, which was secured by the execution and delivery of a receipt for one hundred barrels of whisky of the make of 1873. This receipt was of the same character as the one already recited. This money was raised on Shipman’s note, indorsed by the appellants. The two acceptances, dated on the 16th of May, 1874, having matured, were renewed by the three notes of Cochran & Fulton to Shipman, at four months, the notes dated 11th, 16th, and 19th of September, 1874. When this renewal took place the two receipts given by Shipman for the ninety-five and the one hundred barrels of whisky were surrendered to him by appellants, and new receipts executed and delivered, covering the same whisky. These last receipts are made to bear the same date as the original receipts, and are similar to those surrendered, with these words added, “ Which is executed under and in conformity with the warehouse laws of the state, and subject to its terms and penalties.” Why these last receipts were ante-dated does not appear; but that they were in fact executed and delivered on the 17th of September, 1874, clearly appears. After the maturity of these last notes, they were again renewed, the appellants still holding the receipts to indemnify them against loss. When the original receipts were executed and delivered, the whisky they purported to represent, although owned by Shipman, was not in fact in his warehouse, but in a bonded warehouse in the same county, known as the Ripy warehouse.
On the 17th of June, 1874, the whisky was removed from Ripy’s warehouse by Shipman to his own warehouse in Lawrenceburg, the house in which he professed to have it stored at the time he gave to appellants the first receipts; so the whisky was in fact in Shipman’s warehouse in September, 1874, when the original receipts were surrendered, and other receipts substituted, conforming, as the parties supposed, to the warehouse laws of the state.
*501 Shipman was a warehouseman engaged in making and selling whisky in the county of Anderson, and the appellants were merchants in the city of Louisville, making purchases and sales of whisky on commission, and were ignorant of the fact that the whisky was not in Shipman’s warehouse when the original receipts were delivered, but relied entirely on the statements of Shipman in that regard.
On the 27th of October, 1874, Shipman shipped forty-five barrels of this whisky to E. H. Taylor, a dealer in whisky in the city of Frankfort, and on the 22d of January, 1875, Taylor, by Shipman’s order, forwarded thirty barrels -of this whisky to the appellees Ripy, Hardie & Co., at Louisville. Shipman failed, and the appellants ascertaining that Ripy, Hardie & Co. had thirty barrels of this whisky in their possession, instituted the present action against them for its recovery, obtained an order of delivery, and the sheriff finding nineteen barrels of the whisky with the appellees, took possession of it, and delivered it to the appellants.
The appellants maintain that they are entitled to recover by virtue of the warehouse receipts held by them; and the appellees by their assignee (they having gone into bankruptcy) deny the right of recovery, and say they were vested with the title by reason of their purchase in January, 1875.
The case comes to this court without instructions, the law and facts having been submitted to the court, and a judgment rendered for the defendant.
The issue made involves the consideration of the act entitled “An-act in relation to warehousemen and warehouse receipts,” approved March 6, 1869. The 1st section of that act makes “all persons, firms, corporations, companies, etc., who shall receive cotton, pork, corn, whisky, etc., or any kind of produce, merchandise, etc., or any description of personal property whatever, in store, or undertaking to receive or take care of the same, with or without compensation, warehouse- *502 men.-” By section 2 every warehouseman receiving any thing enumerated in section 1, on demand of the owner or the person from whom he received the same, shall give a receipt therefor, setting forth the quantity, quality, kind, and description thereof, and which shall be designated by some mark, and which receipt shall be evidence in any action against the warehouseman. All receipts so issued by the 3d section of the act are made negotiable and transferable by indorsement in blank, or by special indorsement, and with like liability, as bills of exchange now are, and with like remedy thereon.
Section 4 provides that no warehouseman shall issue any receipt or voucher for any goods, wares, etc., to any person or persons, corporations or companies, etc., unless the goods, wares, etc., shall have been bona fide received into possession and store by such warehouseman or other person, and shall be in store and under his or their control, care, and keeping at the time of issuing such receipt. By the 5th section “no warehouseman or other person shall issue any receipt for any goods, wares, etc., to any person, corporations, companies, etc., as security for any money loaned or other indebtedness, unless such goods, wares, merchandise, produce, etc., or other thing receipted for shall be at the time of the issuing such receipt or voucher the property, without encumbrance, of said warehouseman; and if encumbered by prior lien, then the character and extent of the lien shall be fully set forth and explained in the receipt, and shall be actually and in fact in store and under the control of said warehouseman at the time of giving the receipt or voucher.
Section 6 prohibits the warehouseman from executing any receipt for goods, etc., while any former receipt for the goods, or any part thereof, shall be outstanding and uncollected.
Section 7 prohibits the warehouseman from selling, encumbering, transferring, or removing beyond his immediate control, *503 any goods, produce, etc., for which a receipt or voucher has been given, without the written consent of the person or persons holding the receipt, and the production of the receipt.
Section 8 provides, that any warehouseman or other person who shall willfully and knowingly violate any one or any part of the provisions of the foregoing act shall be deemed a cheat and a swindler, and subject to indictment, and upon conviction shall be fined not exceeding $5,000, and imprisonment in the penitentiary of this state not exceeding five years. This act also provides, that the party injured by the violation of the act may have an action against the wrong-doer for all the damages he may have sustained, etc.
Preliminary to the consideration of the principal questions made in the case, it is proper to notice the suggestion of counsel, that the act of March 6, 1869, was repealed by the adoption of the General Statutes. By the 2d section of the act adopting the General Statutes, all statutes of a general nature in force when the General Statutes took effect, and which were repugnant thereto, were repealed. In the ease of Broaddus’s devisees v. Broaddus’s heirs, reported in 10 Bush, it is said, u This court can not therefore look to the Revised Statutes to supply any defect that may appear in a general law embodied in the General Statutes, except such laws as are expressly left unrepealed by sub-sections 1, 2, etc., of the act adopting the General Statutes.”
There is nothing in the act of 1869 repugnant to any general law found in the General Statutes. The pledge or transfer of warehouse receipts is not embraced by that section of the General Statutes in reference to deeds of trust and mortgages. Deeds of trust and mortgages are not valid against purchasers for value without notice, or against creditors, until they are acknowledged or proven according to law, and lodged for record. The right to pledge or pawn goods as a security for *504 the payment of a debt existed independently of the statute, and was made to rest upon the doctrine of the common law. It is a bailment of personal property only, and the right in the bailee or pledgee is never consummated until the latter has possession of the property. This subject is not treated of by or under any law found in the General Statutes, nor is the manner of creating such a pledge, or the rights of the parties under it, defined or recognized by any of its provisions, nor is the act in the sense and meaning of the repealing clause of the General Statutes repugnant to any provision of the statute against fraudulent conveyances and devises. The legislature of the state, following the Broaddus case, by an act approved March 17, 1876, construed the repealing clause of the General Statutes by providing, “ that no statute of a general nature, enacted since the adoption of the Revised Statutes, on the subject-matter of which the General Statutes makes no provision, shall be deemed to be repealed by the act entitled 1 An act to adopt the General Statutes,’ approved April 22, 1873.” The act of March 6, 1869, is therefore in force.
The right of the appellant to recover the whisky in controversy is resisted on several grounds:
1. That a warehouseman can not give a receipt or voucher on his own goods.
2. That if such a ■ right exists, the property must be in his own warehouse at the time the receipt is executed and delivered.
3. That as the warehouseman (Shipman) violated the provisions of the 5th section of the act by executing a receipt for the whisky when not at the time stored in his warehouse, and under his control, he subjected himself to the penalty imposed by the 8th section; and therefore the entire transaction was void, and passed no right or title to the appellants.
As to the first proposition made by counsel, it is sufficient to say, that this court, in the case of Greenbaum & Bro. v. McGib *505 ben, reported in 10 Bush, 419, determined this question, and we see no reason for declining to adhere to the law as settled in that case. The 5th section of the act was intended to apply to property owned by warehousemen, and' expressly provides that the merchandise, produce, etc., shall be, at the time of issuing the receipt or voucher, the property without eneiombranee of said warehouseman. The object of the act was to enable warehousemen to issue receipts or vouchers for all property stored in their warehouses, whether owned by themselves or others. The warehouseman is required, on demand by the owmer of the goods or produce stored, or the person from whom he received it, to execute a receipt therefor in the manner prescribed by the 2d section, and by the 5th section may issue a receipt or voucher in his own name upon his own property. These receipts or vouchers have some of the characteristics of commercial paper. No one can obtain the property but the holder of the receipt, unless he produces the written consent of the holder, as well as the receipt itself. They are negotiable and transferable by blank indorsement, the indorsers being liable as indorsers of bills of exchange; and as to the property owned by the warehouseman, and for which he gives his receipt, he can assert no claim or set-off as against the holder, unless the receipt on its face shows such right to exist. The act was designed to advance the commercial interests of the state in affording facilities for making sales of personal property in warehouses, without an actual delivery, and to enable the owners, by the transfer of warehouse receipts to pledge the property for the advance of money or the payment of debts; and the fact that the. warehouseman might deceive those with whom he trades, is no answer to the express language of the statute. The validity and fairness of nearly all commercial transactions must to a great extent depend upon the integrity of business men; and whether so or not, this court has nothing to do with the policy of the statute, *506 nor are we required to say that it has answered the purposes of its enactment.
As to the second proposition, it is conceded by counsel for the appellants, that at the date of the execution of the receipts embracing the whisky in controversy, it was in a bonded warehouse in the county of Anderson, known as the Ripy warehouse, and therefore the statement on the face of the receipt, that it was in Shipman’s warehouse, is false. If the receipt or voucher had been executed by Ripy, in whose warehouse the whisky was stored, to Shipman, and then passed to the appellants, there could have been no question as to the right of recovery on the part of appellants, either under the statute or by the rule of the common law. This court, in the case of Newcomb, Buchanan & Co. v. Cabell, reported in 10th Bush, passed upon this question, and held that a symbolical delivery of the property was sufficient. The character of symbol that would, in construction of law, pass the possession to one making an absolute purchase, would pass a like possession to a party holding the property in pledge to secure the payment of a debt. Story, in his treatise on bailments, says, that “ Goods in a warehouse may be transferred by a symbolic delivery of the key;” and in fact this doctrine is so well recognized as not to require authority in support of it. In this case, however, the original receipts, upon which appellants made the advances, could not have given them a constructive possession, as they recite that the whisky was in the warehouse of Shipman, when in fact it was in the warehouse of Ripy; and neither at common law nor under the statute ^could such a transfer affect the rights of innocent purchasers; possession being essential to the validity of a pledge, the pledging of whisky in Shipman’s warehouse would not pass the possession to whisky in Ripy’s warehouse.
"We understand that the act of 1869 applies alone to warehouse receipts or vouchers given by the warehouseman, and *507 that the latter must be in possession of the goods at the time such writings are executed. The goods or produce must be stored in his warehouse or the warehouse kept by him, and the goods under his control at the time; and when he undertakes to execute receipts or vouchers to third parties for property belonging to himself, and stored in the warehouse kept by and under the control of another, the rights of parties thus acquired must be governed alone by the rules of the common law. “All receipts issued by any warehouseman as provided by this act shall be negotiable and transferable by,” etc. (See 3d sebtion.) The words other person or persons, used in the several sections, must be construed as applying to persons who have obtained the warehouse receipts from the warehouseman, and in the 8th section to all those violating the provisions of the act. A party having property stored in a warehouse may sell or dispose of the same in the absence of a warehouse receipt; and this right is not taken from him by statute.
Under the statute, if the party giving the receipt or voucher is a warehouseman, and the goods at the time are in his warehouse and under his control and care, the indorsement or transfer of the receipt or voucher by the owner, or the giving of the receipt or voucher by the warehouseman, if he is the owner, will vest in the purchaser or pledgee a right to the property, and no one is entitled to it without the written consent of the party to whom the transfer is made and the production of the receipt.
In this case it is manifest that no right or title, so as to affect third parties, passed to appellants at the time the original receipts were executed, for the reason that the whisky was not in Shipman’s warehouse, but in the warehouse of Ripy. It appears, however, from the proof, that Shipman removed this same whisky from Ripy’s warehouse into his (Shipman’s) warehouse as early as the 17th of June, 1874, and that on the 16th of September, 1874, when the acceptances fell due upon *508 which appellants were bound, the paper was renewed, and the original receipts executed in the months of May and June surrendered, and the receipts renewed, other receipts having’ been given of the same tenor, with the words added, “ which is executed under and in conformity with the warehouse laws of this state, and subject to its terms and penalties.” The liability of the appellants was continued on the bills by the renewal, and the security made complete by the execution and delivery of the receipts at a time when the whisky was in fact in Shipman’s warehouse and under his control; no purchaser had in the meantime intervened, and Shipman with the whisky in his warehouse, and when he was in a condition to comply with the statute, renewed his receipts. It is true the receipts are dated as of the date of the original receipts executed in May, 1874, but it is an undisputed fact that the receipts were renewed, and the old ones surrendered in September, 1874, when the liability of the appellants was continued by the renewal of the bills.
There is no testimony in the case showing that appellants, at the time the original receipts were executed, had knowledge of the fact that the whisky was in Ripy’s warehouse, and the best of faith is to be found in the acts of both the appellants and appellees in the transaction. Although the original receipts did not vest the appellants with the title or possession as against innocent purchasers, still we perceive no reason why tire parties before the rights of others intervened should not be allowed, by a subsequent stipulation or ratification of the original contract, to again pledge the property to secure the liability. The old maxim “ that he who trusts most must lose most ” does not apply in this case; this is not a question between innocent purchasers; a special interest in the whisky passed to the appellants by reason of the pledge made in September, 1874. The possession of the receipt was, in contemplation of law, the possession of the whisky, and neither the warehouse *509 man or other person could divest appellants of this right and possession without their consent. The appellees purchased in good iaith, but the title they acquired can not affect the rights of appellants who had previously obtained an interest in, as well as a constructive possession of, the whisky.' It is not necessary to determine whether the mere removal of the whisky to the proper warehouse by Shipman, after the delivery of the receipt, could have vested appellants with the possession, and made Shipman their bailee. Such a question is not material to the present controversy.
As to the third proposition, it is evident that the penalty imposed on the warehouseman and others who shall knowingly and willfully violate the provisions of the law, was intended to secure innocent parties from the frauds that might be practiced in the giving of false receipts, and while certain acts are prohibited, and a penalty imposed upon the party committing the wrong, we are not disposed to extend the punishment by declaring the contract void as to the innocent party, and thereby inflict punishment on those whose interests it was the object of the statute to protect • the purpose of the penalty was to prevent fraud, and for the protection of those who might come into the possession of warehouse receipts. We recognize the fact that as a general rule there is no distinction between mala prohibita and mala in se; but as said by Mr. Justice Swayne, in the case of Harris v. Runnels (12 Howard, 79): “ Before the rule can be applied in any case of a statute prohibiting or enjoining things to be done, with a prohibition and a penalty, or a penalty only for ■doing a thing which it forbids, that the statute must be examined as a whole, to find out whether or not the makers of it intended that a contract made in contravention of it should be void. It does not follow that the unlawfulness of the act was meant by the legislature to avoid a contract made in contravention of it.”
And in this case, although the original liability was created *510 upon the pledge of a receipt prohibited from being issued by the warehouseman, as the property was not in his warehouse, yet the subsequent delivery of the receipt by the renewal in September, 1874, upon the consideration that the liability should continue, was not in violation of the statute, or based upon any illegal consideration. We are satisfied, however, that it was never contemplated by the law-making power, that the innocent party should be denied all remedy upon the contract or against the party violating the statute; such an interpretation would defeat the purpose and policy of the statute, by aiding the guilty and punishing the innocent; conceding the facts relied on by the appellees, as a defense to the action, to be true, the appellants were entitled to recover.
The judgment is reversed, and cause remanded with directions to award a new trial, and for further proceedings consistent with this opinion.