Stone, J.
The Greenleaf Mining Company purchased a lot of mining machinery of the Blake Manufacturing Company, for the price of which the former company gave its promissory note, which was executed on its behalf by William Downing, as president and general manager. The property was shipped to Denver in the care of said Downing, for the Greenleaf Company, the consignee, and delivered to the Denver Transit and Warehouse Company, who held it for delivery upon payment of freight and warehouse charges. Afterwards Downing applied to one Cowan for a loan of money to pay the freight and charges on the machinery, offering to give the warehouse receipts as security; and thereupon Cowan loaned *18 the sum of $2,000, for which Downing executed the note of the Greenleaf Company, and assigned to Cowan in the name of said company the warehouse receipts for the property, the freight charges having been paid out of the money so furnished, and the Warehouse Company, having been notified of the transfer, thereafter held the property subject to the order of Cowan. Some time after this, Downing applied to Cowan for an additional sum on the same security, which Cowan declining to do, Downing then applied to Butterfield, the defendant in error, who advanced about $4,000, out of which sum Cowan was paid his loan; Downing took up the note of his company to Cowan, and made a new note to Butterfield, and Cowan assigned and delivered the warehouse receipts to Butterfield, who in turn notified the Warehouse Company of the transfer to him, and the property was held for him accordingly. Some time after this, the Blake Company brought suit on the note of the Greenleaf Company, and' had the property attached.
Thereupon Butterfield brought his action of replevin against the sheriff, Spangler, and upon trial got judgment for possession of the property. To reverse that judgment, the writ of error is prosecuted from this Court.
Two points are relied upon by plaintiff in error, and are discussed by the counsel on both sides; one questioning the validity of the transfer of the property to Butterfield by the mode pursued, as against the rights of the Blake Company, the attaching creditors; the other as to the authority of Downing to bind the Greenleaf Company in the transfer of the property, or in creating the lien upon it claimed by Butter-field.
Upon the first point, it is contended by counsel for plaintiff in error, that the transfer of the property, or the right thereto, to Butterfield, was in effect a mortgage, and that since he neither took the property into actual possession, nor caused the transfer to be acknowledged and recorded after the manner of chattel mortgages, the transfer was void, or at least ineffectual as against the rights of the attaching creditor; and in support of this position, the statute relating to chattel mortgages is cited.
*19 It is further contended that, conceding that the warehouseman, as bailee, held the property for Cowan, to whom the goods were made deliverable by the entries in the books of the Warehouse Company, and the assignment of the receipts, yet no such state of facts existed as to Butterfield; that Cowan, upon receiving the assigned receipts, went to the Warehouse Company and presented them, and that thereupon the company attorned to him, and entered on its books in reference to the goods, “To the order of E. K. Cowan;” but that there is nothing to show that the warehousemen attorned to Butterfield, or that they agreed or assumed to hold the goods for him, and that any one going to the warehouse to look for owners or lienholders of the goods would learn that such goods were held for Cowan; that although Butterfield, upon receiving the receipts, went to the warehouse and showed them to one Snyder, the foreman of the Warehouse Company, and told him that he had advanced money on them, and that Snyder then said to Butterfield that if he had the warehouse receipts, the goods were his, and, upon looking at the receipts, said they were all right, yet that this statement of Snyder’s “was a mere expression of opinion by one not shown to have had any authority, and carried with it no obligation or agreement en the part of the Warehouse Company.”
An examination of the abundant authorities cited upon the other side convinces us that the position taken by counsel for plaintiff in error cannot be sustained.
Outside of statutory provisions, it is held by the authorities generally that while dock warrants, delivery orders and warehouse receipts are not technically negotiable instruments, and the assignment of them does not give to the assignee a better title than his assignor had before the assignment, yet it is quite well settled that the assignment of such instruments amounts to a symbolic delivery of 'the property therein mentioned, and vests the assignee with the same title to the property as an actual delivery would have done, had the assignor delivered the property to the assignee in fact.
Authorities differ somewhat upon the matter of notice to the warehouseman of such assignment; some holding that with reasonable diligence the warehouseman must be notified *20 of the assignment, and to hold for the assignee, or, in default thereof, the title of the assignee may be divested in favor of a judgment or attachment creditor; others hold that such notice is not necessary to effectuate the title of the assignee, against the creditors of the assignor, while other authorities hold that the mere delivery of such instrument without assignment or order, passes the property, and entitles the holder to possession; but all these authorities seem to agree that upon assignment and delivery of these documents, after notice thereof to the warehouseman, and to hold for the benefit of the assignee, and the assent of the warehouseman thereto, the title of the property thereby ve§ts in such assignee, with right of possession against all the w'orld, excepting, of course, valid liens which have attached prior to such assignment. It is said by some authorities that a distinction between mortgages, pawns, and pledges by a transfer of warehouse receipts, consists in this, that while mortgages theoretically pass the title without possession, and pawns transfer possession without the title, the transfer of warehouse receipts passes both the title, and, by symbolical delivery, the possession also. And the same symbolical delivery that would, in construction of law, pass the possession to one making an absolute purchase, would pass a like possession to one taking the property in pledge to secure the payment of a debt. Cochrane et als. v. Ripy et al., 13 Bush, 506.
The following authorities are in support of the general doctrine upon this branch of the case: Gibson v. Stevens, 8 How., *384; Harris v. Bradley, 2 Dill., 287; Smith’s Leading Cases, 1147 and 1197; First Nat. Bank v. Dearborn, 115 Mass., 219; Casey v. Cavaroc, 96 U. S., 477; Gibson v. Bank, 11 O. St., 317; Second Nat. Bank v. Walbridge, 19 O. St., 424; Benton v. Curyea, 40 Ill., 320; Broadwell v. Howard, 77 Ill., 307; Shepardson v. Carey, 29 Wis., 34-43; Dows v. Greene, 24 N. Y., 638.
The evidence in this case establishes the fact of the assignment and delivery of the warehouse receipts for the property to Cowan, and by him to the defendant in error, who gave notice of the same to the Warehouse Company through their foreman, Snyder, and thereby received their recognition of the transaction, and their assent to hold the goods for such as- *21 signee accordingly; and since we consider the notice in this case sufficient, if required, we need not discuss or pass upon any question touching the necessity for such notice, or of its character or extent when required.
Considering solely the questions involved in this case, it is sufficient to decide that, conceding, for the present, the authority of the president of the Greenleaf Company in the transaction, the assignment and‘delivery of the warehouse receipts were equivalent in effect to a delivery of the property itself from the Greenleaf Company to the defendant in error.
Nor can this be considered in conflict with the statute concerning chattel mortgages, cited by counsel for plaintiff in error.
If we concede that the transaction was of the nature and effect of a chattel mortgage, instead of a pledge, merely, of the property, as security for the amount advanced thereon, it will scarcely be claimed that the delivery of possession required in the statute was intended to alter or enlarge the meaning of the language therein employed beyond its ascertained legal sense, or to abrogate any of the settled and well recognized common law modes of delivery of possession of personal property in cases where it is incapable of manual tradition, or where such delivery is impracticable. It must be admitted that the warehouse charges for freight and storage of the goods created a paramount lien upon the property, and it cannot be denied that this claim was rightfully attorned to Cowan by his payment of the charges, the assignment and delivery to him of the warehouse receipts, and the entries thereof in the books of the Warehouse Company. The title and possession thus vested in Cowan did not afterwards become in any way revested in the Greenleaf Company; for Cowan, upon repayment of his loan, did not reassign the warehouse receipt to the Greenleaf Company, but transferred the same to the defendant in error, who was thus substituted for Cowan at the special instance of the agent of the Greenleaf Company, and took the same title and possession of the "property as security for the amount of the sum advanced by Cowan, together with his own additional advance.
*22 There is no attempt to impeach the bona fides of the transaction respecting any of the parties thereto.
Under these circumstances, the relation between the defendant in error, as assignee of the warehouse receipts, and the plaintiff in error, must be considered the same as if such as-signee had purchased the property from some person other than the Greenleaf Company, and ¿hen placed it in store with the Warehouse Company, taking its receipt in the same form, and hence such relation of the parties, in respect to their rights touching the property in controversy, is unaffected by the chattel mortgage act. Shepardson v. Carey, 29 Wis., 43.
The transfer of title and delivery of possession by the issuance of warehouse receipts and their transfers, is said to be more in the nature of a pledge than a mortgage, and that the right to so pledge goods as a security for advances or payment of a debt, exists independently of statute, and is made to rest on the doctrine of the common law, and is, therefore, not embraced in the statute relating to the acknowledgment and record of mortgages. Cochrane et als. v. Ripy et al., 13 Bush., 503.
Besides, the statute of this State, providing that all instruments in writing acknowledging any personal property to be due, etc., shall be assignable so as to “vest the property in each and every assignee successively,” would seem to embrace instruments of the character of those involved in this case. Gen. Laws, Secs. 90 and 91.
The other principal question raised by plaintiff in error is, whether Downing had authority to hind the Greenleaf Company in the transaction. As president and manager of the company, he was its principal officer and agent. The Blake Company itself, the real party in interest contesting Downing’s authority herein, dealt with him as such authorized agent, in selling the goods and taking the nóte for the purchase price, executed by him on behalf of his company, and shipped the goods to him at Denver, or to his care as consignee for his said company.
Previous dealings on behalf of his company were in evidence. The property in controversy was mining machinery destined for use in the business of the company in mining in Colorado. If Downing had authority to purchase and ship *23 this property, to follow it up and receive it as consignee at the point of destination here, he certainly had implied authority to pay the freight and storage; and it would seem to be not a violent presumption to say that in borrowing the money to pay such charges, and in pledging the property as security therefor, he was not acting beyond the scope of the authority which, as president and manager of the company, such general agent impliedly possesses. As a general rule, the authority of an agent to borrow money on behalf of his principal, and convey or pledge its property as security therefor, must be expressly conferred by general or special grant of power, but there are cases where such power may be fairly implied.
Such power is always to be implied where it comes fairly within the general scope of the authority or duties of the corporation, or its agent, in its exercise.
When such implication may be said to arise, and to what extent, depends less upon any general rule than upon the circumstances of particular cases.
It has been well observed by standard writers upon this subject, that it is obvious that the powers of officers, of the same name, are so different in corporations created for different purposes, or in different States and countries for the same purposes, not only by the force of different statutes, charters and by-laws, but also of a different general course and habit of dealing, that the decisions upon this subject, made in one State or country, are to be taken with many grains of allowance when sought to be applied in another; and are to be viewed in minute reference to these differences. The duties of officers of the same name in different classes of corporations, and in the same classes in different countries and States, require and receive for their performance such difference of powers, and these, again, are so varied by the custom and usage of different political and commercial communities, that care must be taken not to be misled by names, but to look upon every decision upon this subject as, in a greater or less degree, individual and local, and in its general principles only applicable in other cases and localities. Ang. & Ames on Corporations, Sec. 297.
In the absence of charter restrictions, the power of a cor *24 poration to make contracts is usually measured by the general objects and purposes of the incorporation, and it is always presumed that any proper contract may be made whose scope and tendency are manifestly to further the design and purposes of its creation. Kitchen v. C. G. & C. R. R. Co., 59 Mo., 517.
The same rule may be applied in given cases to general agents of such corporations.
In this case, the lien of the warehouse company for the freight and storage was unquestionably paramount to the claim of the Blake Company as attaching creditor. (Rucker v. Donovan et al., 13 Kan., 256). In seeking to discharge this lien, Downing appears, as we think, to have been acting in furtherance of the interests and purposes of his company, and within the scope of his duty as its chief officer and agent. Until such discharge, the right of the Blake Company to enforce its claim against the property could not have availed against the superior rights of the Warehouse Company. To satisfy the warehouse claim was a first necessity, and to the extent of its satisfaction by the means employed, the authority of Downing cannot well be questioned. It was but a transfer or substitution of the lien or pledge under which the property was held, and was a step in furtherance of the business purposes of his company. We think there was no error in the instructions to the jury upon this point. The question of authority was one of fact submitted to the jury upon the evidence relating thereto, and upon which a verdict was found; and we cannot say that under the instructions, the evidence was insufficient to support the verdict.
In any view of the case, the plaintiff in error was not entitled to the possession of the property without first satisfying at least the amount advanced by defendant in error for the freight and storage charges. (Rucker v. Donovan, supra; Everett v. Coffin, 6 Wend., 604). And since there is nothing in the record to show that there was any payment or tender of such amount by plaintiff -in error on behalf of the attaching creditor, it is not material in this case to inquire into any question concerning the excess of such amount advanced by defendant in error, if it could be questioned in any case, this *25 being an action in replevin involving the right of possession of the property in controversy.
Horner & Marsh, for plaintiff in error.
Decker & Yonley, for defendant in error.
As regards any hardship in the case, a feature which is to be properly considered only upon equitable grounds, when legal rights are wanting or doubtful, we think the position of the Blake Company (on whose behalf the nominal plaintiff in error seeks a reversal of the judgment), which sold the goods on credit, without taking security therefor, is less grounded in equity than that of the defendant in error, who advanced his money upon the security of the goods, the possession of which passed into his hands as assignee and holder of the warehouse receipts, and without knowledge, so far as the record discloses, of the existence of other creditors. Chicago Dock Co. v. Foster, 48 Ill., 511.

The judgment is affirmed.