## Lockwood *v.* Slevin and Others.

CHATTEL MORTGAGE.—VOLUNTARY ASSIGNMENTS.—A having executed a deed of assignment for the benefit of creditors, the assignee sold the property assigned, and, without applying to the court for an order so to do, paid a debt secured by a mortgage on a part of the personal property assigned. The mortgage was not recorded within ten days after its execution, but the assignee had actual notice of it, at the time the deed of assignment was made. Subsequently the assignee made reports to the court, showing the payments he had made on the mortgage debt, which were confirmed. Suit by the creditors to compel the assignee to account for the money paid by him upon the mortgage.

*Held,* that the failure to record the mortgage within ten days rendered it invalid, and even actual notice could not give it validity.

*Held,* also, that if a petition had been filed by the assignee, under the voluntary assigment law, the court could only have passed upon the question, whether the general fund would be increased by the payment of a valid lien, and could not have passed upon the validity of the lien, so as to bind either the person who held it, or the creditors interested in the assignment, neither being before the court.

*Held,* also, that as an order confirming the payments made by the assignee could have no greater effect than an order previously obtained authorizing the payment of a void lien, the order confirming the action of the assignee was not conclusive upon the creditors.

*Held*, also, that the assignee could not be heard to say that he-took possession of the goods as the agent of the mortgagee, and not under the deed of assignment, as such a relation would be inconsistent with his duty as assignee.

APPEAL from the *Posey* Common Pleas.

FRAZER, J.—This was a proceeding by the appellees, creditors of one who had made an assignment, under our statute upon that subject, for the benefit of creditors, against the assignee, Lockwood, to compel him to account for the proceeds of certain goods embraced in the assignment, one-third of which had been mortgaged by the assignor long before the assignment was made. The mortgage was not recorded within ten days, as required by the statute of frauds, (1 G. & H. § 10, p. 352), but the assignee had actual notice of the existence of the mortgage. Without obtaining or applying for an order of court, as required by the statute (1 G. & H. 116), he sold the goods and paid off a large part of the mortgage debt, and in his reports to the court stated the fact of such payment, and the amount thereof, and the court, no objection being made, confirmed his reports. The complaint, showing the facts above stated, was demurred to, and the demurrer was overruled. That action of the court below is assigned for error.

Lockwood, having assumed to act as assignee, is bound to the creditors as such, and it was not necessary that they should aver that the deed of assignment was recorded.

The statute expressly enacts that a mortgage of chattels, where the possession is not changed, shall not be valid against any other person than the parties to it, unless it is recorded within ten days after the execution thereof. The language is so plain that no room is allowed for construction. Actual notice can make no difference. It has, we believe, been so held everywhere, under a statute like this. *Chenyworth* v. *Daily*, 7 Ind. 284; *Denny* v. *Lincoln*, 13 Met. 200; *Travis* v. *Bishop, id.* 304; *Bingham* v. *Jordan*, 1 Allen 373.

In considering the action of the court below upon the demurrer to the complaint, there remains a question not

suggested by the appellant's brief, which has given us more trouble than those already disposed of, and upon which we are not now unanimous. It is as to the effect of the action of the court in confirming the assignee's reports, showing that he had made the payments upon the mortgage, in connection with the fact that after the first of those reports, the creditors remained silent until after he had made additional payments, and a report thereof had also been confirmed. If, under such circumstances, the acts of the court in confirming the reports are conclusive upon the creditors, then the complaint was bad, and the demurrer should have been sustained. If, however, they are but *prima facie* evidence of the correct action of the assignee, then the complaint was good, for it clearly shows, as we have seen, that the mortgage was void, and hence it should have been so treated by the assignee.

The act concerning voluntary assignments provides that the assignee shall sell the property subject to liens thereon, unless he shall be satisfied that the general fund would be materially increased by the payment of such liens; and in that case he shall apply to the court, by petition, for leave to do so, and shall abide its order made in that behalf. No provision is made concerning notice to creditors of the pendency of the petition, nor is the effect of the order of the court thereon declared, as to them. It is, however, a general rule of law, that no person shall be conclusively bound by a proceeding in court, substantially affecting his interests, to which he is not a party, or in which he has had no opportunity to be heard. Formerly a trustee, doubtful as to his duty in any matter concerning the trust, might have brought his bill in equity, stating the facts as he understood them, making all parties in interest defendants thereto, and praying a decree for his direction. All had an opportunity to be heard, and the decree rendered in the case bound them and protected the trustee. In the absence of the statutory provision which we have referred to, the former proceeding in equity could still be resorted to, and we

think it may be, notwithstanding the statute. The provision under consideration merely authorizes a single question to be submitted to the court by petition, and that is, not whether a lien claimed is valid, but whether the general fund would be materially increased by paying off a valid lien upon the property. No power is expressly given under this *ex parte* proceeding to pass upon the validity of the lien, where that is doubtful, so as to bind either the person who holds it, or the creditors who are interested in that question, and we think no such power can be fairly implied. Inasmuch as a confirmation of the payment afterwards can certainly have no greater effect than an order previously obtained authorizing the payment of a void lien, we reach the conclusion that the confirmation was not conclusive upon the creditors, and that the complaint was good.

The fifth paragraph of the answer alleged that the mortgagee, after the execution of the mortgage, as a partner and joint owner with the mortgagor, took, and for five months continued to hold, possession of said stock of goods, and then, upon a dissolution of the partnership, left the undivided one-third of the same with said mortgagor to be sold by him, as the agent and for the use and benefit of the mortgagee; that said mortgagor afterwards delivered said one-third of said stock to the appellant to be sold for the use, &c., of the said mortgagee; that appellant did so sell them, and applied the proceeds to the payment of the notes secured by said mortgage. To this answer a demurrer was sustained, which is claimed to have been error. The statute of frauds, section ten, where the mortgage is not recorded as required, makes a delivery of the goods to the mortgagee, and a retention of the possession by him, necessary to the validity of the mortgage, and thus secures publicity of the fact of the mortgagee's interest, and prevents the taking effect of secret incumbrances, of which the public could not be advised, or would have no reason to suspect. This paragraph of the answer does not show such a state of facts as is required, and it is therefore insufficient. If the mort-

gagor may become vested with the possession as agent of the mortgagee, which we do not say, it must be in such a way that the public shall not be misled, but shall be advised of the fact that he is but the agent, and not the owner; that he acts for another and not for himself; to the end that he may not, by the visible possession and control and apparent ownership of the goods, obtain a credit which would not be accorded if all the facts were known.    The allegation that the mortgaged goods were received and sold by *Lockwood*, as the agent of the mortgagee, is, on demurrer, a sufficient denial that he received them as assignee, which the complaint avers.    But this allegation that he took possession as agent of the mortgagee he cannot be permitted to make.    As assignee he was bound to treat all the creditors fairly, and therefore to resist a void mortgage held by one of them, the recognition of which as a valid lien would unjustly affect the interests of the others.    He could not, therefore, lawfully become the agent of the mortgagee to take possession of the goods under the mortgage, for that would have been incompatible with his duty as assignee, and a fraud upon the other creditors, and he cannot be heard thus in self-stultification.

The judgment is affirmed, with costs.

GREGORY, C. J., *dissenting.*—I cannot concur in the opinion of the majority.    The complaint in this case shows the following state of facts:

On the 20th of *August*, 1850, *Covington* was the owner of a stock of goods in *Mount Vernon, Indiana.*    On that day he sold two-thirds of the stock to *Joseph Moore* and *John L. Barter.*    On the same day *Covington, Moore* and *Barter* became partners, under the name and style of *John L. Barter & Co.*, and the capital stock of the firm was the goods so owned by *Covington*, and of which he sold the two-thirds to *Moore* and *Barter.*    To secure the payment of the purchase money for the share of the goods purchased by him, *Moore* gave a mortgage upon one-third of the stock of goods then in

store, being one-third of the partnership stock of the firm of *John L. Barter & Co.* After the making of the mortgage, the firm of *John L. Barter & Co.* continued in business until *February,* 1860, when it was dissolved by *Moore* buying the interests of *Covington* and *Barter.* During the continuance of the partnership, the firm of *John L. Barter & Co.* had become indebted to the plaintiffs and others in large sums, and *Moore,* having undertaken to pay the firm's debts, and being in failing circumstances, on the 19th day of *May,* 1860, made an assignment of his goods, under the statute, to *Lockwood,* the defendant, for the benefit of creditors. The goods assigned included all that remained unsold of the original stock owned by *Covington,* which were the subject of the mortgage. The deed of assignment is made an exhibit with the complaint, and shows that the entire stock in trade is embraced therein, and that it was executed according to the requirements of the statute, and for the payment of the debts due the plaintiffs, as well as those embraced in the mortgage. After the execution and delivery to him of the deed of assignment, *Lockwood* took possession of the goods and proceeded to inventory and sell them according to law. The mortgage was not recorded until ten months after its execution, and there was no change of possession of the mortgaged goods. On the contrary, they were substantially in the possession of *Moore,* the mortgagor, from the making of the mortgage till the time of the assignment. At the time of the dissolution of the partnership of *J. L. Barter & Co., Covington, Moore* and *Barter,* the individual partners, were insolvent and continued to be so. The firm was also insolvent, and the trust will not pay more than 50 per cent. of the indebtedness. *Lockwood,* after the delivery of the deed of assignment, entered upon the discharge of his duties as trustee, and sold and converted the goods assigned into money. But notwithstanding the insolvency of the trust he had, under the belief that the mortgage of *Moore* was a valid lien upon the goods, paid the notes to

secure which the mortgage was given, amounting to $1,000, without any direction or allowance by the court. A report to the proper court, showing such payment, had been confirmed.

The exhibits filed with the complaint show that *Lockwood*, at the *October* term, 1860, of the Common Pleas Court of *Posey* county, made a report in which he shows that he had then paid *A. P. Hovey*, on a note given to *Covington*, included in the mortgage on the goods, two sums amounting, in the aggregate, to $348 81, and to *Charles F. Leonard*, on another note secured by the mortgage, $315 94. This report also contained a list of all the claims of creditors which had been presented to the trustee against the assignor.

At the *November* term, 1861, of said court, *Lockwood* made his further report, in which he shows that he had paid *Hovey* the further sum of $61 23, and *Leonard* the further sum of $321 22, on notes secured by the mortgage. *Lockwood* then paid into court $2,150 15, and an order of distribution was made, under which the appellees received their distributive *pro rata* share. This report embraced the entire transactions of *Lockwood*, the trustee, up to that time, and was embraced in the order of confirmation, and no objections were made thereto at the time.

The complaint admits that the plaintiffs had notice of the making and continued existence of the mortgage, but claims that it is void, notwithstanding. Prayer that the order of confirmation be set aside, and that the assignee be required to account for the $1,000 paid on the mortgage, as a misapplication of the funds. A demurrer to the complaint was overruled, to which the defendant excepted and filed an answer in five paragraphs, to each of which a demurrer was sustained, and the defendant excepted, and failing to answer further, a decree was rendered in conformity with the prayer in the complaint.

The errors assigned and insisted on for a reversal of the case, are: 1. Overruling the demurrer to the complaint.

2. Sustaining the demurrers to the several paragraphs of the answer.

The same question arises on the demurrer to the complaint, as is presented by the third paragraph of the answer. The fourth paragraph of the answer substantially alleges that *Covington* being, on &c., the owner and in possession of a certain stock of goods, which was in his store in *Mount Vernon, Indiana,* sold the undivided one-third of the same to *Moore,* for $1,186 96, and took for said sum the four notes of *Moore,* for $296 74 each, payable in four, eight, twelve and sixteen months, and on the 24th of *August,* 1859, took from said *Moore* the mortgage mentioned in the complaint; that *Covington* continued in possession of the goods, as a partner and joint owner thereof with *Moore,* for a long space of time, to-wit, five months; that therefore, and not for the purpose of fraud, he did not have the mortgage recorded till the 16th of *May,* 1860, when the same was duly recorded, &c.; that before and at the time of the making and accepting of said assignment, the plaintiffs had notice that the mortgage had been executed, and that it was unpaid and in full force, and had been recorded, &c.; that *Covington* had demanded of *Moore,* on the premises, the one-third of said stock of goods covered by the mortgage, in the presence of *Lockwood,* to whom *Moore* was then about to make said assignment, and that thereupon *Moore,* with the assent of *Lockwood,* promised *Covington* that he should have his interest in the goods under the mortgage, and afterwards performed said promise, by separating and setting off certain goods from the other goods in said premises, as and for the one-third of the stock of goods so mortgaged as aforesaid, and that thereupon *Lockwood,* by this order, and as the agent of *Covington,* and not otherwise, received said goods and sold the same, and applied the proceeds of said sale to the payment of the notes so secured by said mortgage, then held by said *Hovey* and *Leonard* as the assignees of *Covington;* that the money so paid to *Hovey* and *Leonard* was out of the proceeds of the sale of the said one-third of said stock of goods, so set off

and delivered as aforesaid, and out of no other funds or money whatever.

The fifth paragraph avers that from and after the execution of the mortgage, *Covington* and *Moore* took and continued for some five months in the possession of the goods as joint owners and partners, and at the end of said time they dissolved partnership, and *Covington* left the undivided one-third of the goods in the possession of *Moore*, to be sold and disposed of by him as the agent of *Covington*, and for his use and benefit, and that *Moore* afterwards set off and delivered said one-third of the goods to *Lockwood*, for the use and benefit of *Covington*, and that he, by the order and authority of *Covington*, sold the same, and applied the proceeds to the payment of the notes secured by the mortgage, then held by *Hovey* and *Leonard*, and that the same were paid out of no other funds or money whatever.

This action was commenced on the 19th of *February*, 1862. · The act for the prevention of frauds and perjuries provides that "No assignment of goods, by way of mortgage, shall be valid against any other person than the parties thereto, where such goods are not delivered to the mortgagee or assignee, and retained by him, unless such assignment or mortgage shall be acknowledged, as provided in cases of deeds of conveyance, and recorded in the recorder's office of the county where the mortgagor resides, within ten days after the execution thereof." 1 G. & H. § 10, p. 352.

In the case of *Chenyworth* v. *Daily*, 7 Ind. 284, a similar provision being under discussion, (R. S. 1843, c. 33, § 10,) DAVISON, J., in delivering the opinion of this court says, "This enactment is clear, direct and positive. It admits of but one construction. Between the parties to this suit, the mortgage under consideration, unless recorded within the time limited, had no validity." The fact that the appellees had notice of the mortgage can make no difference as to the question of the validity thereof. By the plain provisions of the statute,

such an unrecorded mortgage is only good as between the parties thereto.

But the record shows that the plaintiffs below, at the time of the assignment to *Lockwood*, had full notice not only of the mortgage, but of all the circumstances which led to the subsequent payment of the debt secured thereby; for in taking the assignment, *Lockwood* was acting on behalf of the creditors.

*Lockwood*, as trustee, made his first report at the *October* term, 1860, of the Court of Common Pleas of *Posey* county, under the provisions of the act providing for voluntary assignments, (1 G. & H. § 11, p. 116), in which he gave a list of all the claims of creditors which had been presented to him including those of the appellees. The twelfth section of that act recognizes the right of any creditor to object to the allowance of the claim of any other creditor, after the filing of such report. The act provides that "any part of the property assigned, on which there are liens or incumbrances, may be sold by the trustee subject to such liens or incumbrances; but in case the trustee should be satisfied that the general fund would be materially increased by the payment of such liens or incumbrances, he shall make application by petition, to the judge of the Court of Common Pleas, for leave so to do, and abide its order in that behalf." Sec. 13. The act further provides that "when the court shall have confirmed the report made as provided for in the 11th section of this act, and if no contested claims are standing on the docket, as provided for in the 12th section of this act, such court shall order such trustee to pay all moneys then in his hands to the clerk of such court," &c., for distribution.

By these several provisions, the Court of Common Pleas has jurisdiction over the trust, with power to order the payment of liens, &c. An order of confirmation, on a written and sworn report, in which the payment of liens is plainly stated, is as binding as an order on petition of the trustee for the same purpose. The court being one of general juris-

diction, and having power over the subject matter, it is indifferent as to the mere mode by which the same end is accomplished. *Lockwood's* first report shows payments on the debt secured by the mortgage to the aggregate sum of $664 75, and the same report contained matters to which the attention of the creditors was legally called, yet no objection was interposed. More than a year afterwards *Lockwood* made his second report, which received the confirmation of the court without objection, in which it is shown that he had paid the further sum of $382 45 on the mortgage debt. Under such circumstances, I am forced to the conclusion that the report of *Lockwood*, confirmed by the court, is at least as binding upon the creditors as a settled account between parties.

This court, in the case of *Allen* v. *Clark et al.*, 2 Blackf. 343, held that the settlement of an administrator's accounts in the Probate Court is *prima facie* correct, and a court of chancery will not interfere with it, except in clear cases of mistake or fraud. BLACKFORD, J., in delivering the opinion of the court, says: "The Probate Court, however, is a court of record, specially invested by the legislature with jurisdiction in these cases, and its decisions are entitled to great respect. An account settled in that court, while the facts are of recent date, is *prima facie* correct. The court of chancery can only interfere in clear cases of mistake or fraud, and the complainant must be held to strict proof."

The remarks of PARKER, J., in the case of *Lockwood* v. *Thorne*, 1 Kernan 170, have a strong bearing on one phase of the case in judgment. He says: "It is not necessary, in order to make a stated account, that it should be signed by the parties. It is sufficient if it has been examined and accepted by both parties. And this acceptance need not be express, but may be implied from circumstances. 1 Story's Eq. Jur., § 526. Keeping it any length of time without objection binds the person to whom it is sent. *Willis* v. *Jernegan*, 2 Atk. 254. Between merchants at home, an account which has been presented and no objection

made thereto, after the lapse of several posts, is treated, under ordinary circumstances, as being by acquiescence a stated account. *Sherman* v. *Sherman,* 2 Vern. 276; 1 Story's Eq. Jur., § 526. Between merchants in different countries a longer time is given, but if no objection be made, after several opportunities of writing have occurred, it is considered an acquiescence. 2 Atk. 252; 2 Ves. 239; 3 John. Ch. R. 570—575; 7 Cranch 147. What is a reasonable time is to be judged of by the habits of business at home and abroad. 1 Story's Eq. Jur., § 526. The law was very fully stated by COLLIER, C. J., in *Langdon* v. *Roane's Adm'r,* 6 Ala. 518, as follows: 'It is said to be a general rule, that where an account is made up and rendered, he who receives it is bound to examine the same, or to procure some one to examine it for him. If he admits it to be correct, it becomes a stated account and is binding on both parties, the balance being the debt which may be sued for and recovered at law upon the basis of an *insimul computassent.* So if, instead of an express admission of the correctness of the account, the party receiving it keeps the same by him and makes no objection within a reasonable time, his silence will be construed into an acquiescence in its justness, and he will be bound by it as if it were a stated account. *Phillips* v. *Belden,* 2 Edw. Ch. 1. In fact, the rule as laid down by the authorities would seem to be that if one does not object to a stated account which has been furnished him, within a reasonable time, he shall be bound by it unless he can show its incorrectness.' *Murray* v. *Toland,* 3 John. Ch. R. 569; *Wilde* v. *Jenkins,* 4 Paige 481. In stating the law as above extracted, the learned chief justice followed the decision in the case of *Phillips* v. *Belden,* 2 Edw. Ch. 1, where the same principles of law are clearly stated."

In the case at bar, the appellees had more than a year to file their exceptions to the first report of *Lockwood,* in which the payment of a large amount of the mortgage debt is plainly stated. They did not do so, but allowed *Lockwood* to make further payments without objection or protest, with

a full knowledge of all the facts, and at last allowed the report to be confirmed by the court, and accepted their *pro rata* under an order of distribution based thereon.   If this did not amount to an acquiescence, the acts of the creditors in standing by and allowing *Lockwood* to make these repeated payments would be a fraud upon him.   The creditors had a right to treat the mortgage as a valid lien and waive the legal objection to its validity.   To say the least there was a strong reason why they should do so in this case; they had full knowledge of all the facts, and the trustee, acting for them, had promised at the time of the assignment that the mortgage debt should be paid.   It is well settled law that an account stated is conclusive upon the parties, unless impeached for fraud or mistake.   *Lockwood* v. *Thorne, supra,* and the authorities there cited.

There is no mistake or fraud alleged in the complaint. The most that the averments amount to is that the court erred in passing the accounts of the trustee.   The error not appearing in the proceedings and order, it cannot be claimed that the court can review its own proceedings. Judge STORY states the rule thus: "But it may be safely affirmed, upon the highest authority, as a well established doctrine, that a mere naked mistake of law, unattended with any such special circumstances as have been above suggested, will furnish no ground for the interposition of a court of equity; and the present disposition of courts of equity is to narrow rather than to enlarge the operation of exceptions.   It may, however, be added, that where a judgment is fairly obtained at law upon a contract, and afterwards, upon more solemn consideration of the subject, the point of law upon which the cause was adjudged is otherwise decided, no relief will be granted in equity against the judgment upon the ground of mistake of the law; for that would be to open perpetual sources for renewed litigation."   1 Story's Eq. Jur., § 138.

He that invokes the aid of equity must do equity.   Even if this settlement is set aside for mistake, the holders of

the *Covington* notes ought to have their *pro rata* with the other creditors of *Moore.* The payment to them of their claims by the trustee obviated the necessity of their presentation and admission.

The court below, in my opinion, erred in overruling the demurrer to the complaint.

*J. E. Blythe* and *J. J. Chandler*, for appellant.

*A. Iglehart*, for appellees.