The Franklin National Bank *et al. v.* Whitehead *et al.*

---

## THE FRANKLIN NATIONAL BANK ET AL. *v.* WHITEHEAD ET AL.

[No. 18,108.    Filed February 24, 1898.]

CORPORATIONS.—*Powers Of*—A corporation possesses only such powers as are expressly given by law, and such implied powers as are necessary to enable it to exercise the powers expressly given. *p. 568.*

SAME.—*Manufacturing Corporation.—Warehouseman.*—A corporation organized under the laws for the incorporation of manufacturing and mining companies, for the manufacture and sale of nails and other products of steel and iron, is not authorized to engage in the business of a public or private warehouseman, or to issue warehouse receipts. *p. 568.*

SAME.—*Public Warehouseman.—Statute Construed.*—A manufacturing corporation not empowered to do the business of a public warehouseman, cannot be authorized to do so by the county auditor upon petition, under section 8704, Burns' R. S. 1894, providing that any person or incorporated company desiring to keep a public warehouse shall be entitled to do so upon receiving a permit therefor from the

county auditor of the county in which such warehouse shall be kept. *568-570.*

CORPORATIONS.— *Pledging Manufactured Goods to Secure Debts.— Warehouseman.—Statute Construed.*—A manufacturing corporation that has never operated as a warehouseman does not become a private warehouseman within the meaning of section 8720, Burns' R. S. 1894 (6541, R. S. 1881), by issuing to creditors, to secure claims, what purport to be warehouse receipts covering goods kept in the building where they were manufactured. *p. 570.*

SAME.—*Warehousemen.—Issue of Receipts as Security for Debt.*—A public warehouseman has no power to issue warehouse receipts upon his own property in his own possession, and deliver the same as a pledge to secure an indebtedness. If a private warehouseman has such power it is by virtue of section 8724, Burns' R. S. 1894. *pp. 570-576.*

SAME.—*Pledge of Property by Debtor, When Not a Warehouse Receipt.*—Where a debtor who is not a warehouseman issues a receipt purporting to be a warehouse receipt, on property in his possession and owned by him, for the sole purpose of securing a creditor, the same is not in any sense a warehouse receipt. *p. 576.*

ESTOPPEL.—*By Conduct.*—To constitute a valid estoppel by conduct, there must be knowledge on the part of the person to be estopped, and there can be no estoppel when there is notice or knowledge on the part of the person relying upon the estoppel. ` *p. 577.*

CORPORATIONS.—*Creditors Bound to Know Powers Of.*—Creditors of a corporation organized under the laws for the incorporation of manufacturing and mining companies are bound to know that such corporation has no power to carry on either a public or private warehouse or issue warehouse receipts. *p. 578.*

WAREHOUSEMEN.—*Authority of to Issue Receipts.—Parties Dealing with Must Take Notice.*—Parties dealing with a public warehouseman is held to know that such warehouseman has no authority to issue warehouse receipts on his own property in his warehouse, as a security for his own debts or the debts of others. *p. 578.*

CORPORATIONS.—*Contracts Ultra Vires.—Void Contracts.—Estoppel.*—The doctrine that when a corporation enters into a contract merely beyond its powers, which, if made by a private person, would have been binding upon him, and such contract has been performed by the other party thereto, the corporation will not be permitted to deny its power to make such contract, does not apply to contracts that are forbidden by statute, or are contrary to public policy. *pp. 578, 579.* `

PLEDGE.—*Actual or Constructive Delivery of Property to Pledgee.*— The delivery of purported warehouse receipts, to a creditor, by

VOL. 149—36 `

a corporation not authorized to do a warehouse business, is not a constructive delivery of the property, nor is a separation of the property from the rest of a stock of goods, without the knowledge of such creditor, an actual delivery so as to constitute a pledge. *pp. 580, 581.*

LIEN.—*On Personal Property.—How Given by Creditor.*—There is no mode, under the law of this State, except by chattel mortgage, duly acknowledged and recorded, by which the owner of personal property, retaining its possession, can give another a lien upon it that can be enforced against any person except the parties· thereto. *p. 581.*

RECEIVERS.—*Insolvent Corporation.—Rights of Creditors.*—When a court has taken possession of the property of an insolvent corporation, and appointed a receiver, the property of the corporation is a trust fund for the payment of its debts, and a general creditor has a lien upon such property, and therefore has a right to intervene and contest the validity, as well as the priority of other claims or asserted liens. *pp. 583, 584.*

SAME.—*Of Insolvent Corporation.—What Actions Can Be Maintained By.*—A receiver of an insolvent corporation represents the creditors as well as the stockholders, and holds the property for the benefit of both, and, as trustee for creditors, can maintain and defend actions which the corporation could not.   *p. 584.*

From the Hancock Circuit Court.   *Affirmed.*

*Daniel Wait Howe* and *Baker & Daniels*, for appellants.

*W. A. Ketcham, Morris, Newberger & Curtis* and *F. E. Matson*, for appellees.

MONKS, J.—In January, 1894, in a proceeding brought for that purpose, the court below appointed a receiver for the Greenfield Iron and Nail Company, an insolvent corporation, located at Greenfield, Indiana, who took possession of the property of said corporation under the order of the court, for the purpose of applying its assets to the payment of its debts. Appellants, two of the creditors of said corporation, filed their separate intervening petitions, claiming that by virtue of certain receipts, purporting to be public warehouse receipts, issued by said corporation, they had liens upon a large portion of the property of said

The Franklin National Bank *et al. v.* Whitehead *et al.*

corporation, and were entitled to have the same set apart and applied to the payment of their claims.    To these intervening petitions the receiver and the First National Bank, of Brazil, on behalf of themselves and the other general creditors, filed separate answers. The court made a special finding of facts, upon which conclusions of law were stated against the Franklin National Bank of Brazil, on behalf of themselves and intervening petitioners, and, over their separate motions for a new trial, judgment was rendered against them.

The errors assigned call in question each conclusion of law and the action of the court in overruling the motions for a new trial.    It appears from the special finding that the Greenfield Iron and Nail Company was organized on November 3, 1889, under the laws for the incorporation of manufacturing and mining companies, having its office and principal place of business at the city of Greenfield, Indiana.    The object of said corporation, as set forth in its articles of association was, "the manufacture and sale of nails, and other products of steel and iron."    In December, 1890, said company made a written application to the auditor of Hancock county for a permit to keep a public warehouse, and received a paper purporting to authorize it to operate a public warehouse of class B.    Said company never owned or operated a public warehouse of either class A or B, or pretended to, other than the room used in the manufacture of nails, never received any goods, wares, or merchandise on storage, or owned or leased a place for the storage of goods, and never issued any papers purporting to be warehouse receipts, except the papers so designated in this case, and a similar one to one of appellants, the Franklin National Bank, in a transaction similar to the one in which said bank received the papers men-

tioned in its intervening petition.    The effort of said
Greenfield Iron and Nail Company to occupy the posi-
tion of a warehouseman was to enable it to borrow
money without impairing its credit by giving chattel
mortgages or making pledges of its stock.    While the
company was engaged in carrying on its business, the
nails manufactured were put in kegs, and upon the
head of each keg was branded the name of the com-
pany and the kind and size of nails contained therein,
and the kegs were placed in rows on one side of the
rooms where made.    Prior to December 9, 1890, the
Greenfield Iron and Nail Company, by its president,
applied to appellant the Franklin National Bank for
a loan of $5,000.00 and promised to secure said loan by
giving as collateral security therefor a warehouse
receipt covering nails of sufficient value belonging
to said company; and on the 9th of December, 1890,
said bank loaned said company $5,000.00, for which
said company executed its note, payable 120 days
after date, endorsed by five persons; and it was re-
quired that said company should ship and store said
nails in a regular warehouse in Indianapolis.    After-
wards, in January, 1891, said company made out a
statement showing the sale of 2,670 kegs of nails and
the size and kind of nails in each keg, to said bank,
valued at $5,009.95, and at the same time made out
a receipt which recited that the Greenfield Iron and
Nail Company, in its capacity of a public warehouse-
man, hereby certifies that it has received of the Frank-
lin National Bank the following described property
(describing the kegs of nails the same as in the in-
voice aforesaid, except no value is mentioned, and the
words "marked 'Lot A,' " were used), which is deliver-
able to the order of said Franklin National Bank upon
the return of "this receipt and the payment or tender
of proper charges."    This receipt was signed by the

company.  Both of these papers were delivered by said company to the bank for the purpose of complying with its promise to secure said note.  Afterwards, in April and May, 1891, loans were made by the National Bank 'of Rockville to said company, under like arrangements and conditions, to secure which like papers, except the kegs of nails were not designated as being marked "Lot A" or otherwise, were executed and delivered to the National Bank of Rockville.  Afterwards, in July, 1893, the company executed and delivered to the Rockville Bank, as additional security for said loans, papers of like kind for "800 kegs of cut steel nails 10 d com."  No nails were in fact sold by said company to either of said banks, and said bank made no actual deposit of nails with the company, but said company, at the time said papers were delivered, had in its general stock, in its manufacturing establishment at Greenfield, nails of the kind described in said receipts.  The failure of said company to ship the nails to Indianapolis, as agreed with the Franklin National Bank, was not known or assented to until said receipt and invoice were received and accepted by said bank, about February 1, 1891.  The nails described in said several receipts were not removed from the room where manufactured and were not set apart or separated from the general stock then on hand of the same and different kinds, nor were they marked "A," or in any other manner except in common with all other nails manufactured by said company.  The bank officers of said bank did not know the method of manufacture and storage of said nails or the kind of place where stored, or that said nails, described in the receipt of the Franklin National Bank, had not been set apart and marked "Lot A," as indicated in said receipt to the Franklin National Bank.  Nor did they make any

inquiry or effort to ascertain the character of the pretended warehouse at Greenfield, or whether said nails were stored therein or at any other place, or as to what had been done or was being done with respect to said nails, but wholly relied upon said receipts. The loans evidenced by said notes were renewed from time to time by giving other notes with the same indorsers, and the same were accepted by the banks in reliance upon the papers held, respectively, as security for said loans. After the execution of said receipts the Greenfield Iron and Nail Company continued to manufacture nails, and when so manufactured the kegs in which they were placed were mingled indiscriminately with other kegs containing nails of a similar kind on hand at the dates of the execution of said receipts to said banks, and kept in the company's building, and sales were made by the company from time to time, and the nails sold were taken indiscriminately from the stock on hand, and no effort was made to distinguish between the nails on hand when said receipts were executed and those subsequently made. That at the time of the execution and acceptance of said receipts the nail company and the appellants intended to create a valid lien on the nails therein described, as collateral security for said loans. On January 4, 1894, the president of the Greenfield Iron and Nail Company gave directions that nails of the same kind and quality specified in the receipts held by said banks, respectively, be set apart and marked for said banks. On said day the company, to secure the Franklin National Bank a lien on said nails, without the knowledge of said bank, commenced to set apart nails of the same kind, quality, and description as those mentioned in the receipt given to said bank, so far as they were on hand, and the same were placed in piles and separated from other nails, and the piles

so set apart were designated as "Lot I." This was completed on January 13, 1894, before the appointment of a receiver. It cannot be determined how many of the nails, if any, so set apart were on hand when said receipt was given to said bank. No nails were set apart for the Rockville bank for the lack of time, as the receiver was appointed immediately after the completion of the work of setting apart the nails designated "Lot I." At the time the order was given to set apart said nails, on January 12, 1894, the Greenfield Iron and Nail Company was insolvent and in embarassed circumstances, and was unable to meet or pay the claims against it, and when said order was given the officers of said company well knew that said company could not continue in business, and said order was made in contemplation and expectation of the appointment of a receiver, and that the same would be wound up as an insolvent concern. The receiver was appointed on January 13, 1894, and took possession of the property of said company, including the nails, in separate piles designated as "Lot I," but in resorting the nails in order to take an invoice, and in removing them from exposure to the weather, the nails in said piles were mingled with other nails of the same kind in the building. No warehouse charges for storage or other expenses were charged by said company against the holders of said receipts, nor was any scale or schedule of charges ever fixed or adopted by said company.

To constitute a valid pledge, there must be an actual or symbolical delivery of possession of the thing pledged, and, to preserve the pledge, the pledgee must retain the possession of the property. Ordinarily the physical possession of the property is delivered to and retained by the pledgee. If, however, the property is delivered by the owner to a warehouseman and a

warehouse receipt is given therefor by the warehouse-man, the endorsement of the warehouse receipt, and the delivery thereof to the pledgee is regarded, in law, as the delivery of possession to the pledgee of the property described in the warehouse receipt. Sections 8716, 8722, 8729, Burns' R. S. 1894 (6537, 6543, 6550, Horner's R. S. 1897); Hale on Bailments, 127; Jones on Pledges, sections 23, 280, 281, 287.

The first question to be determined is whether the Greenfield Iron and Nail Company was authorized to engage in the business of public warehouseman, and as such issue warehouse receipts.

The special finding shows that said Greenfield Iron and Nail Company was organized under the laws for the incorporation of manufacturing and mining companies, and that its object, as stated in the articles of association, was to manufacture and sell nails and other products of steel and iron. A corporation possesses only such powers as are expressly given by law, and such implied powers as are necessary to enable them to exercise the power expressly given. *State Board of Agriculture* v. *Citizens Street R. W. Co.*, 47 Ind. 407, 409; Clark on Corp., 120. The business of public warehouseman was not necessary or incidental to the business of said company in manufacturing or selling nails or other products of steel or iron. It is evident that such company was not authorized, by the laws under which it was organized, to engage in the business of public warehouseman or to issue warehouse receipts.

It is insisted, however, by appellants, that as said company made a written application to the auditor of Hancock county and obtained a permit from him to carry on the business of public warehouseman under the provisions of section 8704, Burns' R. S. 1894 (6525, Horner's R. S. 1897), it was fully authorized, by said

section, to carry on that business and issue warehouse receipts.

The section referred to is the first section of the public warehouse act of 1875, as amended in 1879, and the part relied upon by appellants is as follows: "Any person or incorporated company desiring to keep any such public warehouse shall be entitled to do so upon receiving a permit therefor from the auditor of the county in which such warehouse shall be kept." Section 8704, Burns' R. S. 1894. If appellants' construction of said section is the correct one, then all the corporations in the State, whether educational, charitable, religious, commercial, or otherwise, whatever may be the provisions of the law under which organized, are given the right of going into and carrying on the business of public warehousemen. While the language quoted from said section is very broad, it was certainly not the intention of the legislature to confer on all the corporations in the State, without regard to the law under which they were organized, and the purposes and objects of their organization, the privileges of public warehousemen. As well hold that persons without capacity to contract on account of infancy, insanity, or other disqualifications were, by said statute, authorized to engage in the business of public warehousemen and execute valid warehouse receipts.

A warehouseman is defined to be the owner of a warehouse; one who, as a business and for hire, keeps and stores the goods of others. (Black's Law Dictionary.) A person who receives goods and merchandise to be stored in his warehouse for hire. (Bouvier's Law Dictionary); 28 Am. and Eng. Ency. of Law, 636, 637; Edwards on Bailments, section 332; Hale on Bailments, 238.

Only such corporations as are authorized by the law under which they are organized to carry on the busi-

ness of warehouseman can avail themselves of the pro-
visions of said act of 1875 (Acts 1875, p. 172), as
amended by the act of 1879 (Acts 1879, p. 230), being
sections 8704, 8719, Burns' R. S. 1894 (6525, 6540, Hor-
ner's R. S. 1897). It follows that said nail company
was not authorized to operate as a public warehouse-
man, or issue any warehouse receipts under the pro-
vision of said act of 1875, as amended by the act of
1879.

Appellants insist that, if the nail company could
not become a public warehouseman, then its acts, as
stated in the special finding, made it a private ware-
houseman, under the act of 1879, (Acts 1879, p. 231,
sections 8720-8729, Burns' R. S. 1894, 6541-6550, Hor-
ner's R. S. 1897), and the receipts issued to appellants
are sufficient, in equity, to carry out the intent of the
nail company and appellants, by creating in appel-
lants a lien upon the nails described in said receipts.

Section 8720 (6541), *supra*, provides that "Every per-
son, firm, company or corporation, receiving cotton,
tobacco, pork, grain, corn, rye, oats, wheat, hemp,
whiskey, coal, any kind of produce, wares, merchan-
dise, commodity, or any other kind or description of
personal property or thing whatever, in store, or un-
dertaking to receive or take care of the same, with or
without compensation or reward therefor, shall be
deemed and held to be a warehouseman." Said nail
company was not authorized by the law under which
it was organized to engage in the business of private
warehouseman any more than it was authorized to
carry on the business of public warehouseman, and
the special finding shows that the said nail company
never received any goods, wares, or merchandise or
other property on store from any one, and that it was
not engaged in business as a warehouseman and never
had been, and did not operate a warehouse, and that

no receipts were ever issued by it, except to said appellants. It is clear from the finding that the nail company never in fact kept a warehouse to store goods in, and was not engaged in business as a public or private warehouseman, nor was it authorized to engage in such business. In *Sinsheimer* v. *Whitely,* 111 Cal. 378, 52 Am. St. 192, 43 Pac. 1109, the court said: "It is only persons who pursue the calling of warehousemen —that is, receive and store goods in a warehouse as a business for profit—that have the power to issue a technical warehouse receipt, the transfer of which is a good delivery of the goods represented by it. *(Shepardson* v. *Cary,* 29 Wis. 42; *Bucher* v. *Commonwealth,* 103 Pa. St. 534; Edwards on Bailments, section 332)."

In Minnesota, where the rule that a warehouseman can pledge his own goods in his warehouse to secure an indebtedness, by issuing a warehouse receipt to the pledgee, prevails, it is held that one who is not a warehouseman cannot give a valid warehouse receipt upon his own property, in his own possession, to secure his own debt. *National Exchange Bank of Hartford* v. *Wilder,* 34 Minn. 149, 155, 157, 24 N. W. 699; *Fishback* v. *Van Dusen,* 33 Minn. 111, 22 N. W. 244. In the case in 34 Minn. cited, the court said: "The owner of goods, if a warehouseman, can pledge the same by issuing and delivering his own warehouse receipt to the pledgee. * * * When the pledgor or the vendor is a warehouseman, the public has notice from that fact that the title and legal possession of property in his warehouse may be in others, although the actual physical possession is in himself."

In *Geilfuss* v. *Corrigan,* 95 Wis. 651, 37 L. R. A. 166, 70 N. W. 306, one Schleisinger owned two corporations,—one the Buffalo Mining Company, a mining corporation engaged in mining ore in Michigan; the other the Douglas Furnace Company, engaged in

smelting ore in Pennsylvania; the furnace company had a large stock of pig iron constantly on hand in its yards in Pennsylvania. In order to raise money for the furnace company Schleisinger caused the furnace company to issue apparent storage receipts to the mining company, without consideration and without agreement to purchase, and without selection or delivery, and with the agreement that the receipts should be returned whenever the furnace company needed them on account of sales of iron. On receiving the receipts, he borrowed money of the plaintiff bank upon the notes of the mining company, secured by assignment of the receipts as collateral. The plaintiff bank took said receipts innocently, and without knowledge of any defect. The court said: "In order to be such [warehouse receipts] they must be issued by a warehouseman or one openly engaged in the business of storing property for others for a compensation. * * * *Bucher* v. *Commonwealth*, 103 Pa. St. 528; *Shepardson* v. *Cary*, 29 Wis. 34. And the fact that the receipt was executed by a warehouseman must affirmatively appear in the evidence, *Shepardson* v. *Cary, supra.* Not only was there no proof in this case that the furnace company was in the warehousing or storage business, but, on the contrary, the proof was conclusive that it was not in such business, and never had been. The fact that it surreptitiously issued the false receipts in question did not constitute it a warehousing corporation. As well might it be argued that the issuance of counterfeit bank bills constitutes the counterfeiter a bank. It seems that, had the receipts been negotiable warehouse receipts, the bank would have acquired a valid lien upon the iron they represented by the transfer and endorsement of the receipts to it by the Buffalo Mining Company. * * * But we may dismiss this question, because they were not

such certificates, and the plaintiff obtains no advantage from the fact that they were in the usual form thereof. Nor were the certificates valid as chattel mortgages upon the iron named in them, not only because they are not chattel mortgages in legal effect, but also because by the law of Pennsylvania, as well as by the law of Wisconsin, a chattel mortgage is only valid as to third persons when filed in 'the proper office, and there is no claim of any filing here."

The private warehouse act of this State (Acts 1879, p. 231, sections 8720-8729, Burns' R. S. 1894, 6541-6550, Horner's R. S. 1897), is substantially the same as the warehouse act of March 6, 1869, of the state of Kentucky, and was no doubt taken from that act. In *Mechanics' Trust Co.* v. *Dandridge* (Ky.), 37 S. W. 288, Dandridge gave a receipt purporting to be a warehouse receipt for property left in his possession, which receipt was pledged to Mason, Gooch & Hodge Company by its holder as collateral security for a debt, and the Kentucky court of appeals, in construing said statute, held that the same was not a warehouse receipt, and that Mason, Gooch & Hodge Company had no lien at all on the property. The court said: "The statute  *  *  evidently refers to only such persons as in fact keep a warehouse to store goods in, and are engaged in that business. It cannot be that it was the intention of the legislature to provide that any one and all persons might become legal warehousemen by simply receiving one particular piece of property in store and issuing a receipt therefor. There is no pretense that Dandridge was engaged in keeping a warehouse and storing property therein as a business. It therefore follows that the receipt in question was and is invalid and ineffectual, and the indorsement thereof passed no interest in the property. It is, as a general rule, indispensable that possession must accom-

pany a pledge of property in order to vest the pledgee
with a title or interest therein.  *  *  *  *  It is there-
fore perfectly manifest that there was no change of
possession, and nothing to warn the public of any·
change.  *  *  *  If appellee [Mason, Gooch & Hodge
Company] desired to acquire a lien on the property, it
could have done so by obtaining a mortgage, and then
it would have been secure, and no other creditor need
to have been misled.  It is not necessary to discuss the
question of notice, because appellees have no lien at
all on the property, and it is wholly immaterial
whether the appellant knew of the receipt or not."

It follows that even if the nail company was·author-
ized by statute to engage in business as a private
warehouseman, it not having done so, said receipts,
even if they purported to be issued by it as a private
warehouseman, would be invalid and ineffectual and
would not create a lien on the property described
therein.  Besides, we do not think that the nail com-
pany had any power or authority to issue warehouse
receipts upon its own property, in its own possession,
and deliver the same as a pledge to secure an indebt-
edness, even if it was engaged in business as a public
warehouseman and was fully authorized by the law to
carry on such business.  Such a receipt would not, in
a technical sense, be a warehouse receipt, and even
if between the parties it created a lien, as to which
we need not and do not decide, it would be void as
against all other persons, under section ten of the
act for the prevention of frauds and perjuries, being
section 6638, Burns' R. S. 1894 (4913, Horner's R. S.
1897), which provides that "No assignment of goods,
by way of mortgage, shall be valid against any other
person than the parties thereto, where such goods are
not delivered to the mortgagee or assignee and re-
tained by him, unless such assignment or mortgage

shall be acknowledged, as provided in case of deeds of conveyance; and recorded in the recorder's office of the county where the mortgagor resides, within ten days after the execution therof." *Saint Joseph Hydraulic Co.* v. *Wilson,* 133 Ind. 465, 474.

It may be true, as claimed by appellants, that a private warehouseman is authorized by section five of the act of 1879, p. 231, being section 8724, Burns' R. S. 1894 (6545, Horner's R. S. 1897), to issue warehouse receipts for his own property actually in store and under his control at the time of giving the receipt. The entire act, of which said section 8724 (6545), *supra,* forms a part, seems to have been taken from the statute of Kentucky, and the court of last resort in that state has held that said section authorizes a warehouseman to issue warehouse receipts upon his own property in the manner and under the conditions provided in said act. *Cochran* v. *Ripy,* 13 Bush. (Ky.) 495; *Ferguson* v. *Northern Bank,* 14 Bush. (Ky.) 555. If a private warehouseman has such authority in this State, it is by virtue of said section 8724 (6545), *supra,* and without said section he would have no such power. Jones on Pledges, section 325; Hale on Bailments and Carriers, p. 128. Said act, however, is distinct in form and purpose from the public warehouse act of 1875, as amended March 29, 1879, sections 8704-8719, Burns' R. S. 1894 (6525-6540, Horner's R. S. 1897), and said acts are entirely independent of each other. *Miller* v. *State,* 144 Ind. 401, 404. It is clear that said section does not authorize a public warehouseman to issue warehouse receipts on his own property, nor is there anything in the public warehouse act which authorizes it.

It follows that a public warehouseman would have no more power to issue a warehouse receipt upon his own property in his warehouse, as security for a debt,

unless there was a statute expressly authorizing it, than would a debtor who is not a warehouseman. Where a debtor who is not a warehouseman issues a receipt purporting to be a warehouse receipt, on property in his possession and owned by him, for the sole purpose of securing a creditor, the same is not in any sense a warehouse receipt. *Conrad* v. *Fisher*, 37 Mo. App. 352, 8 L. R. A. 147, 152, 153; *Mechanics Trust Co.* v. *Dandridge, supra; Sinsheimer* v. *Whitley, supra; Geilfuss* v. *Corrigan, supra; National Exchange Bank of Hartford* v. *Wilder, supra; Steaubli* v. *Blaine Nat'l Bank*, 11 Wash. 426, 39 Pac. 814; *Thorne* v. *First Nat'l Bank*, 37 Ohio St. 254; *Union Trust Co.* v. *Trumbull*, 137 Ill. 146, 164, 27 N. E. 24; Jones on Pledges, sections 325, 326.

In *Union Trust Co.* v. *Trumbull, supra*, T. W. Hall & Company, merchants and factors in wool, issued a receipt for their own wool in their own possession to one Vehmeyer, as security for money borrowed from him, and the court held that he was not entitled to a lien on the wool described in said receipts. The court on p. 164, said: "His claim is based on a receipt issued by Hall & Co., who were not public warehousemen, and which was therefore of no more effect as a lien than a certificate issued by any other property owner. It is only where property is stored in a *public* warehouse that a receipt may be given which will evidence a lien upon the property."

In *Thorne* v. *First Nat'l Bank, supra*, it was held that an instrument, substantially like a warehouse receipt, issued to a creditor by a debtor, who was not a warehouseman, on his own property, for the sole purpose of securing the creditor, was void as against other creditors, when the property remained in the possession of the debtor, for the reason that it was an attempt to create a lien upon personal property con-

trary to the provisions of the statute making chattel mortgages void if not accompanied by delivery of possession unless the mortgage, or a copy thereof, was deposited in the office of the officer named in the statute.

It is insisted, however, by appellants that the nail company is estopped from denying that it was a warehouseman, and that it held as such the nails mentioned in the receipts, for and subject to their order. We do not think the nail company was estopped as claimed by appellants. It is true, as urged by appellants, that when a person is carrying on the business of warehousemen, public or private, under our statutes, and he issues warehouse receipts which comply with the requirements of the statutes under which he is operating his warehouse, and the person to whom said receipts have been issued indorses the same to innocent holders for value, that the warehouseman is estopped from denying that he holds the goods described on the terms specified in the receipts; but this rule has no application here for the reason that it is not shown by the special finding that the nail company is a public or private warehouseman, or that it was engaged in such business or had any power to do so, or that said receipts have been indorsed to an innocent holder, but the special finding shows that said company was not a warehouseman, public or private, and never had been, and had no power to engage in such business or issue warehouse receipts. The rule is that, to constitute a valid estoppel by conduct, there must be knowledge on the part of the person to be estopped, and a want of knowledge on the part of the party relying on the estoppel, and there can be no estoppel when there is notice or knowledge on the part of the person relying upon the estoppel.

Vol. 149—37

*First Nat'l Bank* v. *Williams*, 126 Ind. 423, 429, 430; *Buck* v. *Milford*, 90 Ind. 291, 293, and cases cited; *Stewart* v. *Beck*, 90 Ind. 458.    If the nail company could be estopped as insisted by appellants, it would only be, if at all, when appellants had no notice or knowledge that the nail company was not a warehouseman, and was not engaged in such business, and had no power to engage in such business or issue warehouse receipts, but believed in good faith that it was engaged in such business, and had the power to do so and issue warehouse receipts, and that, relying upon such facts, they accepted the receipts and made the loan on the faith thereof.    To sustain the estoppel claimed by appellants against the nail company, the facts necessary to constitute the same must be clearly stated in the special finding, leaving nothing to intendment. *First National Bank* v. *Williams, supra.* No such facts are stated in the special finding, but, on the contrary, so far as the special finding shows, appellants knew that the nail company was engaged in the manufacture of nails, and that it was organized under the laws for the incorporation of manufacturing and mining companies, and was not a warehouseman public or private, and never had been, and was not authorized to carry on such business or issue such receipts.    Besides, they were bound to know that, under our statutes, a corporation, organized under the law for the incorporation of manufacturing and mining companies, had no power to carry on either a public or private warehouse, or issue warehouse receipts; and that a public warehouseman had no authority to issue warehouse receipts on his own property in his public warehouse, as a security for his own debts or the debts of others.

It is insisted by appellants that if the nail company was not authorized to be a public warehouseman, and

had no right to issue public warehouse receipts on its own property to secure its own debts, its acts in doing so were merely *ultra vires*, and as such contracts have been performed by appellants in loaning said nail company the money, that after receiving the benefits of the contract, it cannot avoid such warehouse receipts on the ground that it has exceeded its corporate powers in issuing them.    There is much conflict in the decisions of courts of last resort as to the doctrine urged, but in the jurisdictions where it prevails the rule is that when a corporation enters into a contract, merely beyond its powers, which, if made by a private person, would have been binding upon him, and such contract has been performed by the other party thereto, the corporation will not be permitted to deny its power to make such contract, but the same may be enforced against it..    It would seem that what we have already said in regard to the nail company being estopped to deny that it was a warehouseman, and had the power to issue said receipts and hold said nails for appellants, is a sufficient answer to this contention of appellants, but we think there are also other reasons why such contention cannot prevail. But, as we have shown, a public warehouseman, whether a corporation or an individual, cannot issue a public warehouse receipt on his own property, in such warehouse, as security for his own debts or the debts of others, and such receipt, if issued, creates no lien on such property.    The rule urged cannot, therefore, apply to this case, even if it were conceded that the nail company was authorized by law to engage in the business of public warehouseman, and was actually engaged in such business.    Besides, the doctrine urged does not apply to contracts where the same are forbidden by statute or are contrary to public policy. *State Board of Agriculture* v. *Citizens' Street R. W.*

*Co.*, 47 Ind. 407, 411; 27 Am. and Eng. Ency. of Law, 378. As we have shown, any attempt by any person to create a lien on his personal property, except in the manner provided in section ten of the statutes for the prevention of frauds and perjuries, is void, and if by an assignment by way of mortgage, the same, unless recorded within ten days after its execution, is void as to all persons except the parties thereto. As there was no law authorizing the nail company to issue said receipts, and thus create a lien on said personal property, the creation of a lien in that manner is expressly forbidden by section ten of the act for the prevention of frauds and perjuries, being sectin 6638 (4913), *supra. Saint Joseph Hydraulic Co.* v. *Wilson, supra,* p. 474.

It is clear that the only interest appellants can claim in said nails under said receipts is that of a lien thereon as pledgees. To make a valid pledge there must have been either an actual or constructive delivery of the property described in the receipts. Good faith does not make good a pledge unless there has been a delivery and possession, either actual or constructive. The special finding shows that there was no actual delivery when the receipts were executed. There was no delivery unless the delivery of the receipts to appellants was a constructive delivery. If the nail company had been a warehouseman, and authorized to issue said receipts, upon its own property, and they had in all respects conformed to the requirements of our statutes, the delivery thereof, as collateral security to secure said loans, might have been sufficient constructive delivery. But this rule, as we have shown, does not apply to property in the possession of the pledgor, who is not a warehouseman, and in such case the delivery of the receipts is not a constructive delivery of the property described

in the receipts. *Shepardson* v. *Cary, supra; Geilfuss* v. *Corrigan, supra.* The setting apart of the nails described in the receipt to the appellant, the Franklin National Bank, just before the appointment of a receiver, was without the knowledge of said bank, and was not a delivery to said bank, nor did said bank then or at any time take or have possession of said nails. As there was no actual or constructive delivery of the nails to appellants, and they never had actual or constructive possession thereof, they had no lien thereon as pledgees. There is no mode, under the law of this State, except by chattel mortgage, duly acknowledged and recorded, by which the owner of personal property, retaining its possession, can give another a lien upon it, that can be enforced against any person except the parties thereto. *Saint Joseph Hydraulic Co.* v. *Wilson, supra,* p. 474. There having been no delivery of possession, actual or constructive, of said property, said receipts, even if valid as to the nail company and appellants, were void as to third parties, under section ten of the act for the prevention of frauds and perjuries, being section 6638 (4913), *supra.* It will be observed that under said section an assignment or mortgage of goods as security is only valid as to the parties thereto, and is void as to all other persons, while in many of the other states it is only void as to creditors and purchasers for value without notice.

In *Saint Joseph Hydraulic Co.* v. *Wilson, supra,* p. 474, this court, in speaking of equitable and other liens where there was no delivery and retention of possesion of the property upon which the lien was claimed said: "But in each there is that feature of an 'assignment of goods' which 'as against any other person than the parties' renders it invalid under our statutes, unless acknowledged and recorded. The

cases of *Kennedy* v. *Shaw*, 38 Ind. 474; *Lockwood* v. *Slevin*, 26 Ind. 124; *Ross* v. *Menefee*, 125 Ind. 432; *Scarry* v. *Bennett*, 2 Ind. App. 167; Boone on Mortgages, section 253, notes 14, 15, establish the invalidity of such an 'assignment of goods,' even as to third persons with actual notice of the lien. This court held in *Granger* v. *Adams*, 90 Ind. 87, that one who asserts a right under such an instrument, paramount to the claims of creditors, must show that all has been done which the statute requires." Under said section, therefore, an assignment of goods by way of mortgage, if not recorded within ten days after its execution, is void as against a subsequent purchaser, even though he had actual notice thereof. *Ross* v. *Menefee, supra; Saint Joseph Hydraulic Co.* v. *Wilson, supra*, 474, 475; *Stengel* v. *Boyce*, 143 Ind. 642, 646, and cases cited; *Granger* v. *Adams*, 90 Ind. 87; *Kennedy* v. *Shaw*, 38 Ind. 474. Such an assignment of goods is also void as against an assignee under a voluntary assignment for the benefit of creditors, and it is his duty to take advantage of the failure to record the same in ten days after its execution. *Lockwood* v. *Slevin, supra*, 125, 128; *Saint Joseph Hydraulic Co.* v. *Wilson, supra*, p. 474; *Hanes* v. *Tiffany*, 25 Ohio St. 549; *Blandy* v. *Benedict*, 42 Ohio St. 295; *Thorne* v. *First Nat'l Bank, supra; Bingham* v. *Jordan*, 1 Allen 373, 79 Am. Dec. 748; *Adams* v. *Merchants National Bank*, 9 Biss. 396, 403; 2 Cobbey on Chat. Mort., section 619; Jones on Chat. Mort., section 314, and cases cited. The assignee is regarded as representing and standing in the place of the creditors, as well as the assignor, and he therefore has the right to contest claims and the rights to property which the assignor did not possess. *Lockwood* v. *Slevin, supra; Voorhees* v. *Carpenter*, 127 Ind. 300, 301, and cases cited; *Cooper* v. *Perdue*, 114 Ind. 207; *Seibert* v. *Milligan*, 110 Ind.

106; *Hasseld* v. *Seyfort*, 105 Ind. 534; *Adams* v. *Merchants' Nat'l Bank, supra*, p. 403. The assignment is made for the benefit of creditors, and the assignee holds the property in trust for them, and as such he can enforce any right and reach any property that a general creditor could enforce either before or after obtaining judgment and execution, in case there had been no assignment. *Lockwood* v. *Slevin, supra; Kilbourne* v. *Fay*, 29 Ohio St. 264, 278, 279; *Hanes* v. *Tiffany, supra; Adams* v. *Merchants Nat'l Bank, supra.*

It is clear from the language of section 6638 (4913), *supra*, that as such trustee for the creditors he is not a party to any assignment of personal property by way of mortgage made by the assignor, within the meaning of said section. If an unrecorded assignment of goods, by way · of mortgage, is void as against an assignee for the benefit of creditors, for the same reason it is also void as against a receiver of an insolvent corporation.

When a court has taken possession of the property of an insolvent corporation for administration, and appointed a receiver, the property of the corporation is a trust fund for the payment of its debts. *First Nat'l Bank* v. *Dovetail, etc., Co.*, 143 Ind. 534, 542, 543, and cases cited; *First Nat'l Bank* v. *Dovetail, etc., Co.*, 143 Ind. 550, 553, 554; *Henderson* v. *Indiana Trust Co.*, 143 Ind. 561; *Graham Button Co.* v. *Spielman*, 50 N. J. Eq. 120, 24 Atl. 571. And a general creditor has a lien upon such property, and therefore has the right to intervene and contest the validity as well as the priority of other claims or asserted liens. *Farmers Loan and Trust Co.* v. *San Diego St. Car Co.*, 45 Fed. 518, 520; *Richardson's Exr.* v. *Green*, 133 U. S. 30, 44; 2 Cook on Stock and Stockholders, section 788, p. 1272, and notes 1 and 2. Such receiver represents the

creditors as well as the stockholders and holds the property for the benefit of both. He is the trustee for both, and, as trustee for the creditors, can maintain and defend actions which the corporation could not. *Nat'l State Bank* v. *Vigo County Nat'l Bank*, 141 Ind. 352, 356, and authorities cited; *Graham Button Co.* v. *Spielmann, supra; Hopper* v. *Lovejoy*, 47 N. J. Eq. 573, 21 Atl. 298; *Farmers Loan, etc., Co.* v. *Minneapolis, etc., Engine Works*, 35 Minn. 343, 29 N. W. 349; 5 Thompson on Corp., sections 6945, 6946, 6952; Gluck & Becker on Receivers of Corp., p. 168; Beach on Receivers (Alderson's ed.), sections 298, 455. As trustee representing the creditors of an insolvent corporation, he is not, therefore, a party to an assignment of goods made by the corporation to secure an indebtedness, within the meaning of section 6638 (4913), *supra*. As such trustee, representing the creditors, he may avoid an assignment of goods by way of a mortgage made by the corporation, on the grounds that it was not recorded within the time required by law. *Farmers Loan, etc., Co.* v. *Minneapolis, etc., Engine Works, supra; Rudd* v. *Robinson*, 61 Hun. 339, 346-348, 7 N. Y. Supp. 535; *Graham Button Co.* v. *Spielmann, supra; Hopper* v. *Lovejoy, supra;* Gluck & Becker on Receivers of Corp., p. 168; Beach on Receivers (Alderson's ed.), p. 726; 5 Thompson on Corp., section 6952.

It is clear, therefore, even, if said receipts created a lien on said nails as against the nail company that they were void as to the general creditors and the receiver as trustee for them, and that the general creditors could reach the same through the receiver and by intervening petitions, the same as the general creditor could have done after levying writs of attachment thereon, or after obtaining judgment and execution, if there had been no receivership. Appellees claim

that, as the receipts did not state any distinguishing marks, that they were invalid.

The public warehouse law requires that "all warehouse receipts for property stored in public warehouses of Class B shall distinctly state on their face the brand or distinguishing mark on such property." Such receipts must so describe the property that it can be identified by such description from other property of like kind. The private warehouse law contains a like requirement. The view we have taken of this case renders it unnecessary for us to determine whether or not the description of the property contained in the receipts complied with the law.

We have read the evidence, and the same sustains the finding of the trial court. It follows, from what we have said that the court did not err in its conclusions of law, nor in overruling the motion for a new trial.

Judgment affirmed.